Hammer, Appellant, *v*. City of Philadelphia.

Argued October 9, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Paul Reilly,* for appellant.

*Ward C. Henry,* and with him *G. Coe Farrier,* Assistant City Solicitors, and *Augustus Trask Ashton,* City Solicitor.

Opinion by Cunningham, J., January 28, 1932:

In October, 1928, the City of Philadelphia was constructing a subway under a portion of South Broad Street and in connection therewith laid down temporary sidewalks, constructed of two-inch planks. At a point on the east sidewalk about four feet from the curb and opposite the south building line of Chestnut Street there was a manhole, approximately three feet in diameter, leading into a conduit of a public utility and covered with an iron disc, securely fastened. A circular hole, corresponding in size with the disc, was cut out of the planking in order to afford access to it. This left the upper edges of the planks two inches above the level of the iron cover; the edges were then beveled around the opening, producing a sloping ap-

proach from the upper side of the planks to the cover of the manhole.

Nearly three months later, December 21, 1928, the plaintiff, familiar with the locality and accompanied by a friend, was walking north on the east side of Broad, between Sansom and Chestnut, at a time when the sidewalk was crowded with pedestrians; as they approached the corner of Chestnut plaintiff stepped, with his left foot, on the beveled edge of the planking surrounding the manhole; his ankle turned and his foot slid across the iron covering; a fracture of one of the ankle bones was suffered.

The trial of his action against the city for damages resulted in a verdict in his favor for $500; the court below, in an opinion by STERN, P. J., granted defendant's motion for judgment in its favor n. o. v. and plaintiff has appealed.

No material facts were in controversy and the only variation in the testimony was in the manner in which the witnesses, called by the opposing parties, characterized the construction around the manhole. Appellant's testimony was to the effect that the edges had been "leveled off in a crude way, but still there was a very rough edge there." Another said, "It looked to me as if it was beveled with probably one of those slab hatchets chopping it down." The city's inspector of construction testified, "We beveled the edges so as to produce about a forty-five degree angle, so as to produce safe conditions as far as possible."

Appellant's account of the accident reads: "A friend of mine and I were going to lunch, north on Broad Street, he on the house side and I on the gutter side. Of course, there was a holiday crowd, just before Christmas it was. It is always bad there, and going north and south on Broad Street, and east and west on Chestnut Street about the same time. We were milling around in the crowd, trying to go west on Chestnut Street. Just as I got to the corner, I

went down as if I was shot. Of course, my friend—I could not fall to the ground—held me. I had hold of his arm, anyway. I could not fall all the way on account of the crowd. I just seemed to shoot along and I found out later that I turned my ankle in this hole and slid to the opposite side. Q. Could you see the hole before you stepped into it? A. No, on account of the people my face— ...... By the Court: Q. Exactly how did you fall in that place, in that hole? I did not understand that. A. I probably stepped on the edge and turned my ankle and slid. Q. Stepped on the edge—you mean, on the board? A. Yes. Q. You cannot call that a fall into a hole. You mean, you got your foot on the edge of the board? A. Turned my ankle, slid on the edge. Q. On the edge of the board? A. Probably half over and half not. Q. You say you probably did. Do you know what you did, what happened? A. I just turned my ankle on the edge of that hole and slid across the hole. Q. Are you sure that is what you did? A. Yes, sir.''

The responsibility of the city for the construction and maintenance of the sidewalk was conceded. Apparently recognizing the applicability of Becker v. Phila., 212 Pa. 379, and Brodsky v. Phila., 66 Pa. Superior Ct. 467, the city did not suggest that appellant was chargeable with contributory negligence. Our only question, therefore, is whether there was any evidence from which a jury could properly be permitted to draw an inference of negligence upon the part of the city. It was not an insurer against all defects in its sidewalks and no presumption of negligence arose from the happening of the accident. Its duty was to construct this sidewalk in a way that would render it reasonably safe for use by pedestrians and so maintain it; the standard is reasonable safety. Appellant sought to recover upon the theory of a structural defect, but made no effort to prove that the city's method of constructing this plank sidewalk around the man-

hole was unusual, having regard to the necessity for the laying down of a temporary walk. A jury may not be permitted to fix a standard for the construction and maintenance of sidewalks and then hold a municipality negligent if there has been a failure to come up to the jury's conception of how a walk should be constructed and maintained. In Reed v. Tarentum Borough, 213 Pa. 357, (a case in which the plaintiff was injured by a fall occasioned by striking his foot against the edge of a stone projecting above the adjoining stones in the sidewalk), our Supreme Court said: "The law fixes the standard of duty as reasonable care, and it cannot be left to the judgment or caprice of a jury to establish any other standard. The necessity for and the plan of municipal improvements are matters within the discretion of the municipal authorities. The question of necessity is never for a jury, and the question as to the plan is not whether the best and safest plan has been adopted but whether that adopted is reasonably safe; and reasonable safety, as in the case of machinery and methods, is to be determined by the standard of ordinary usage: Borough of Easton v. Neff, 102 Pa. 474; Canavan v. Oil City, 183 Pa. 611. The same rule applies as to the duty of maintenance. The question in this case was whether the pavement was reasonably safe. This was to be determined by the standard of ordinary usage and not by a standard the jury might set up." Appellant contends the testimony of his witnesses that the planks had been "leveled off in a crude way," leaving "a very rough edge there," was sufficient to take the case to the jury. But, as remarked by the court below, "to say that it was 'crude' or 'rough' means little; it is like the familiar case of a passenger in a trolley car saying that the car 'started with a jerk'—language which has been held too indefinite to warrant submission of the case to a jury." The cases cited in behalf of appellant are distinguishable upon

their facts. The one most nearly resembling the present is Ponti v. Phila., 63 Pa. Superior Ct. 428, in which it was held that a court could not say as a matter of law that a hole, one and one-half inches deep and ten inches square, in a concrete sidewalk was such an irregularity as might be expected in city sidewalks. In that case, however, there was no evidence that the sharp edges of the hole had been beveled or any precautions taken to render it safe. We agree with the court below that "to entitle [appellant] to go to the jury he should have been obliged to show definitely there was some projecting obstacle or some depression in the pavement which would be a source of likely danger."

In our opinion, there was no evidence from which a jury should be permitted to conclude the city had been negligent in the construction or maintenance of this sidewalk.

Judgment affirmed.