Kuntz et al. *v.* Pittsburgh, Appellant, et al.

Argued April 24, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Wm. Alvah Stewart, Jr.,* Assistant City Solicitor, for appellant.

*Edwin M. Rhea,* with him *Charles F. Patterson,* for additional defendant.

*Henry Kauffman,* with him *Louis Little,* for appellees.

OPINION BY PARKER, J., September 30, 1936:

The plaintiffs, husband and wife, have judgments against the City of Pittsburgh on account of injuries suffered by the wife as a result of a fall on a sidewalk. The city has taken appeals from the judgments entered and now insists that the court below erred in refusing its motions for binding instructions and for judgment n. o. v.

Since the plaintiffs have verdicts in their favor we will refer to the testimony in the light most favorable to them, giving them the benefit of every inference of fact which may reasonably be deduced from the evidence, as we are required to do. The wife plaintiff at about 8 P. M. on April 13, 1932, was walking alone on a sidewalk on 42nd Street a short distance from Davison Street in the City of Pittsburgh when she stepped on an uneven place in the sidewalk which caused her ankle

to turn and her to fall in such a way that she struck her head on a tree and was rendered unconscious. It was dark at the time but there was an electric light on the far corner of the two streets. The sidewalk was "slushy" as a result of rain and snow which fell the day before. For this reason an irregularity in the pavement at the point at which she turned her ankle could not be seen by her in the dark in the exercise of reasonable care. The sidewalk was of concrete and was constructed with expansion joints. At the point where the wife fell there was a joint which extended through the middle of the sidewalk parallel with the street. The plaintiffs' witnesses testified that at that point the cement block next to the property line was from 1½ to 2 inches higher than the block towards the curb and that this condition had existed for more than two years. The wife was not familiar with this condition prior to the accident. She had passed along the street but upon the opposite side thereof. None of the witnesses for the plaintiffs made an actual measurement of the depression but gave their best judgment of the amount from observation. One witness at least who passed the point daily had observed the amount of the off set on a large number of occasions. Shortly after October 10, 1934 and about two and one-half years after the accident, two employees of the defendant made an actual measurement of the depression which measurement was repeated in February, 1935. They testified that actual measurement showed the off set on both occasions to be 1⅛ inches.

The appellant first contends that the evidence conclusively establishes the fact that the difference in elevation was not more than 1⅛ inches, and second, that the trial judge should have held as a matter of law that the sidewalk was reasonably safe and the case should not have been submitted to the jury.

The appellant in support of its first proposition relies

upon the case of *McIntyre v. City of Pittsburgh*, 238 Pa. 524, 528, 86 A. 300, where it was said: "Where a matter of measurement is important, the 'guesses' or 'belief' of a witness cannot be accepted as against the sworn statements of competent witnesses who give the results of actual measurements." The same principle was affirmed in the late case of *Wright v. Pittsburgh*, 320 Pa. 40, 43, 181 A. 476, and in *Chapman v. Clothier*, 274 Pa. 394, 118 A. 356, and *Lunzer v. Pittsburgh & L. E. R. R. Co.*, 296 Pa. 393, 145 A. 907. This rule is in no respect at variance with the rule with reference to the province of court and jury stated by Justice SHARSWOOD in *Reel v. Elder*, 62 Pa. 308 and reaffirmed in *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236, 163 A. 523, for it is a question of law whether the evidence, if believed, is sufficient to establish the factum probandum. The cases relied upon by appellant are not applicable to the present situation. The measurements taken here were made about two and one-half years after the accident occurred. Although there was some evidence that the sidewalk was in the same condition at about the time the measurements were made as it was at the time of the accident, such testimony was of the same character as that of the plaintiffs, to wit, an estimate. It may well have been that the elevation of either or both of the concrete slabs changed in the interval. The action of frost or other causes may have changed the situation in the elapsed time. A very different situation was presented in the McIntyre case where the question of measurement involved the width of a tread on a pair of steps and the measurements were made by the contractor who built the steps, an assistant city engineer, the inspector of highways and other witnesses. The estimates of plaintiff's witnesses were six or seven inches and the actual measurements twelve inches. In the other cases cited the actual measurements were made promptly or there was no

chance of a change. If the measurement here had been made promptly a different situation would be presented. Under the circumstances, to hold with appellant would result in rejecting all estimates. The extent to which the appellate courts have gone in this matter is to say that uncertain estimates cannot prevail over actual measurements by competent witnesses.

We then reach the point where we must determine whether the court may say as a matter of law that in the situation shown to exist at the time of the accident proof of an off set of from $1\frac{1}{2}$ to 2 inches was not evidence of negligence on the part of the city. The law fixes the standard of duty by a municipality in the maintenance of sidewalks as reasonable care: *Reed v. Tarentum Boro.*, 213 Pa. 357, 62 A. 928. In determining what is reasonable care the appellate courts of this state have frequently pointed out that streets cannot be maintained at a dead level and that there must be some inequalities and off sets here and there and that to hold a municipality responsible for missteps or slips by users of streets would be to make it an insurer: *Mason v. Philadelphia*, 205 Pa. 177, 54 A. 773; *King v. Thompson*, 87 Pa. 365, 370. "Irregularities in grade, unevenness in surface, sharp depressions at crossings, accidental displacement of brick or stone, and many other things which may or may not be defects, but yet sufficient in themselves to cause accident to the unwary, are so common and usual that it is the duty of the pedestrian to be observant of such fact, and not to walk blindly. If through no fault of his he is prevented from seeing the defect, obstruction or whatever it may be, which it is the duty of the municipality to have corrected, and injury results to him, he is entitled to claim compensation": *Lerner v. Philadelphia*, 221 Pa. 294, 295, 70 A. 755.

The extent of irregularity which may be present in a street without convicting a municipality of negligence

in its maintenance varies with other circumstances such as amount of travel, actual location of the rise or depression, character of material with which the pavement or walk is constructed, nature of the irregularity and other circumstances. This is illustrated by several cases to which we will refer. In *Reed v. Tarentum Boro.*, supra, on appeal the case was sent back for retrial to determine whether the municipality was negligent. The appellant in the present case informs us that the paper books in that case show that a flagstone in a sidewalk was raised from $1\frac{3}{4}$ inches to 2 inches above the level of adjoining stones. In *Newell v. Pittsburgh*, 279 Pa. 202, 123 A. 768 there was a variance of $1\frac{1}{2}$ inches in the flagstone in a street crossing and it was held in that situation that the variation was not sufficient to show negligence. Account was there taken of the fact that the footwalk was in a street over which heavy vehicles passed making it impossible to maintain an even surface for the walk. In *Purcell v. Riebe*, 227 Pa. 503, 76 A. 212, a new building was under construction and the dirt beneath the sidewalk was being excavated and a temporary sidewalk was installed. This walk consisted of two inch plank which at the point where the plaintiff tripped overlapped two inches. As it was shown the plaintiff was aware of the improvements being made and the temporary nature of the sidewalk, it was held that the off set was not sufficient to show negligence. In *Calligan v. Monongahela City*, 272 Pa. 28, 115 A. 869, the evidence showed a hole in a sidewalk caused by the dropping out of a piece of glass, one of a number of like openings used to admit light to a vault below and just of sufficient size to catch an ordinary heel of a woman's shoe and thereby cause a fall. It was held that such a defect was sufficient to sustain a verdict of a jury against the city.

The decisions establish that an irregularity may be so slight that the court is required as a matter of law

to say that such unevenness is not evidence of lack of reasonable care, but there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to the fraction of an inch, a result which is absurd. The true principle was tersely stated by Judge TREXLER in the case of *Shafer v. Philadelphia,* 60 Pa. Superior Ct. 256, as follows: "What particular shallowness of depression in a sidewalk or a street forms such a slight inequality in the surface, as to excuse its presence and release the city of liability therefor cannot be definitely stated. Each case must necessarily be determined by the surrounding circumstances and generally the matter must be left to the jury."

Relying on the principles underlying the previous decisions rather than the exact amount of difference in elevation that may have appeared in any particular case, we are of the opinion that the court properly submitted the question of negligence to the jury. The accident occurred at night in the dark when there was slush on the sidewalk and the wife plaintiff did not have previous knowledge of the defect. The defect had existed for several years and was caused by a seam which ran longitudinally with the walk. There was sufficient off set to cause her to fall and be injured. The location was in the street of a large city where there was "considerable" traffic. While the amount of the depression was such that it was a close question for the jury that very fact is a controlling reason why the court could not dispose of it as a matter of law. That a person would turn his ankle on just such a defect as was shown to be present for a number of years was a result that the jury might have concluded the city should have anticipated.

Judgments affirmed.