## CITY OF WACO v. STINNETT et ux.

### No. 2562.

Court of Civil Appeals of Texas. Waco.

Dec. 30, 1943.

Rehearing Denied Feb. 3, 1944.

D. M. Wilson, City Atty., and Sleeper, Boynton, Darden & Burleson, all of Waco, for appellant.

W. L. Eason, of Waco, for appellees.

TIREY, Justice.

This is a damage suit. S. E. Stinnett and wife, Mrs. Lillian Stinnett, brought this suit against the City of Waco, a municipal corporation, for damages growing out of personal injuries sustained by Mrs. Stinnett in a fall which occurred as a result of Mrs. Stinnett striking the heel of her shoe on the raised part of a concrete block forming a part of the sidewalk on Clay Avenue in the City of Waco. On the verdict of the jury favorable to plaintiffs and against the City, the court awarded judgment in favor of the plaintiffs against the City for the sum of $2,346.80. Defendant seasonably presented its motion for peremptory instruction and its motion for new trial, both of which were overruled; hence this appeal.

Point 6 is substantially to the effect that no actionable negligence was shown on the part of the City and that the trial court should have directed a verdict for defendant. On the issues pertinent to this point, the jury found substantially (1) that the pavement of the sidewalk was broken and a part of it projected above the other part, and Mrs. Stinnett caught the heel of her shoe on the projection, causing her to fall; (2) that such broken and projecting part of the sidewalk rendered it in a condition that was not reasonably safe for pedestrians using said sidewalk while in the exercise of ordinary care, and that such condition had existed a sufficient length of time prior to the fall that the City, in the exercise of ordinary care, should have discovered such condition and should have re-

paired the same; (3) that the failure of the City to repair the sidewalk prior to the fall of Mrs. Stinnett was negligence, and that such negligence was a proximate cause of her injuries, and that her injuries were not the result of an unavoidable accident; (4) that the elevation of the raised place in the sidewalk at the point against which Mrs. Stinnett hung the heel of her shoe was 1¾ inches; (5) that the defect in such sidewalk was not so plainly observable that an ordinarily prudent person would have known thereof in the exercise of ordinary care; (6) that the danger of injury arising from the defect was not so obvious that an ordinarily prudent person would have appreciated that it endangered his safety; (7) that such defect was of such character as was likely to be observed by the city officials charged with the duty of keeping the sidewalks in repair, and that such defect was not so slight and trivial in character that an injury therefrom could not have been reasonably anticipated. The jury acquitted Mrs. Stinnett of all negligence.

It is without dispute that the accident happened on the south side of the concrete sidewalk, four feet wide, on Clay Avenue between 16th and 17th Streets, and that such street is paved and is one of the principal thoroughfares in the City of Waco; that Clay Avenue runs in an easterly and westerly direction and intersects South 18th Street, which runs in a northerly and southerly direction, 18th Street being one of the principal thoroughfares leading from the business section of the City to the State highways. The place of the accident is in the residential section of the City, but there are many business houses and churches located along Clay Avenue in the vicinity of 15th, 16th and 17th Streets, which are cross streets, and the streets and sidewalks in this vicinity are greatly used; that there are 159 miles of sidewalk in the City; that Mrs. Stinnett lived at 1803 Burnett, which street is one block south of and parallel to Clay Avenue, and that she had lived at such place for more than one year. At the time of the accident she was approximately seventy-one years old; was in possession of her eyesight; was wearing glasses; her vision was "pretty good" with her glasses on; and she was wearing shoes with medium-sized heels. On that day Mrs. Stinnett walked from her home to 18th Street, thence to Clay Avenue, and then east on Clay, on the south side thereof. In describing her fall she said: "Well, I was just walking along; wasn't thinking nothing about anything and looking down in front of me, just like I was going and hung my heel and went to falling and tried to catch myself and just stumbled on and finally fell." She further testified that she pointed out the exact place on the sidewalk where she hung her heel, and that she saw her husband and her counsel measure the depth of the defect in the sidewalk and that it was 1¾ inches. She further testified in substance that she was not looking across the street; that she was walking carefully; that she had never noticed the defect in the sidewalk before she fell; and that she thought she had passed that way a few times before she fell; that she had left home on the morning of the accident about 9:15 or 9:30 and was on her way to Sunday School at a church located at 15th and Clay Streets, which was about two blocks from the scene of the accident; that she was alone at the time she fell. She further testified in part:

"Q. Now, Mrs. Stinnett, you never had noticed, as I understand you, this raised place in the sidewalk before that time, is that correct? A. Yes, sir.

"Q. You had passed over that sidewalk a number of times? A. I never paid any mind to it.

"Q. * * * As you go up on 17th Street, as you cross 17th, you have a curb there, step up on the curb up from the street? A. Yes, sir. * * *

"Q. You step up on that curb? A. Yes, sir.

"Q. Then you began to travel on down the street in the direction of the church? A. Yes, sir.

"Q. Now, as you walked along there, Mrs. Stinnett, in what direction were you looking? A. I was looking straight ahead of me like I always do when walking.

"Q. Were you looking down the sidewalk? A. Well, I guess I was looking straight ahead of me.

"Q. Did you notice this raised place in the sidewalk before you stepped in it? A. I never noticed it, no sir.

"Q. It was a clear day, wasn't it? A. Well, I don't remember; I think though it was.

"Q. You know it wasn't raining. A. No, it wasn't raining.

"Q. You have been back there on several occasions and looked at that place, that is true, isn't it? A. Yes, sir.

"Q. It is not a thing that is hidden is it? A. No, sir.

"Q. You have no trouble seeing it? A. No, sir. * * *

"Q. In other words, when you looked for it, you don't have any trouble seeing it at all? A. That is correct.

"Q. On this particular day, as I understand, you say you didn't see it? A. No, sir.

"Q. Can you tell us why you didn't see it Mrs. Stinnett? A. No, sir, I cannot.

"Q. Was there any automobile coming down the street on that occasion? A. I don't know.

"Q. You know there were people standing at the Lutheran Church on the other side there? A. Yes, sir.

"Q. Did you see those folks there that morning? A. No, sir.

"Q. Was you looking in that direction when you hung your heel? A. No, sir.

"Q. In other words, you were looking right down the sidewalk as you walked along? A. Right straight ahead of me.

"Q. When you (say) straight ahead, I don't know whether you mean looking at the sidewalk or higher up? A. I wasn't looking way up, no, sir.

"Q. I know, but whether your eyes were on a level with your body or whether you looked down the sidewalk? A. I walked like I always do. I don't know whether way up yonder or right down here. I just walked along looking in front of me.

"Q. I believe what you say happened is that you hit your heel on that raised place? A. Yes, sir.

"Q. Which foot Mrs. Stinnett? A. The right foot. * * *

"Q. Now, Mrs. Stinnett, when I took your deposition, let me ask you if you remember this question?: I asked 'Now, Mrs. Stinnett, as you traveled along there on that occasion just before you put your right foot down at the point where your heel hung against that raised place I will ask you to state whether or not you were looking down at that place or whether you were looking off in some other direction,' and you answered, 'I was looking down the sidewalk.' 'Q. Looking down at the sidewalk? A. Yes.' You remember giving that testimony? A. Yes, I believe I do.

"Q. Is that correct? A. I reckon it is. I was looking down in front of me, I guess I was looking at the sidewalk.

"Q. All right, I asked you this question. 'Q. Can you explain to us how it is if you was looking at the sidewalk that you came to place your heel against that raised place?' and you answered, 'A. I couldn't say. I just made a step and there is where my foot went down, but I didn't know it was against that place when I went to step again until I hung it.' Do you remember giving that testimony? A. Yes."

Mrs. Stinnett's husband testified in part as follows: That he measured the depth of the defect after his wife was out of bed and that it was 1¾ of an inch;

"Q. * * * Just explain to the jury what you mean by an inch and three quarters? A. An inch and three quarters on the right sidewalk to the crest of the sidewalk—it is higher, one side lower and the other higher.

"Q. In other words, the sidewalk is made more or less on a slant? A. Yes, sir.

"Q. It is in slabs and one slab had been pushed up an inch and three quarters? A. Yes, sir, that's right.

"Q. Did that extend across the sidewalk, the elevation of an inch and three quarters? * * * A. No, sir, it dropped on the left to where it wasn't probably more than that high (indicating).

"Q. How much is that? A. I think about an inch and a quarter.

"Q. In other words, on the south side it was an inch and three quarters high and went down on the other side until it was about— A. About level. * * *

"Q. I will ask you, Mr. Stinnett, how long that particular defect had been there that caused your wife to fall, to your certain knowledge? A. Well, it has been there a good number of years because the roots of a tree pushed it up.

"Q. What do you mean by 'good number of years,' one, two or how many years? A. A couple or two years anyway. * * *

"Q. * * * Take the condition of the sidewalk, we will say within 15 or 20 feet of this particular place where your wife was injured, what was its general condition. A. Well, west of the place where she fell it is fair but east of that it is pretty rough, lots of bumps and broke up places.

"Q. I will ask you how long it has been in that condition to your certain knowledge? A. I couldn't tell you about the broken up part but there has always been bad places; it seems like it gets worse all the time. * * *

"Q. You have already testified that the raised place does not extend all the way across the sidewalk? A. Well, it does not. It levels up somewhere, say two-thirds of the way across—I won't say for sure, two-thirds across.

"Q. The picture itself shows it levels up? A. It does, yes. * * *

"Q. * * * I believe you say you had noticed this raised place in the sidewalk before Mrs. Stinnett fell there? A. I walked over the sidewalk maybe a hundred times before she fell.

"Q. Was Mrs. Stinnett ever with you on any of those journeys there traveling east or west? A. She has been along there, yes.

"Q. She has been along there? All right, now on one of these occasions when she was along there with you, had you ever mentioned the fact of this raised place? A. No, sir, I didn't think about it. I would have, like any person passing a bad place on the sidewalk, seen it and stepped over it.

"Q. Is that what you did? A. Yes, I stepped over it.

"Q. You never had any trouble getting over the sidewalk? A. Not that one.

"Q. You didn't have any trouble in those places along there? A. No, sir, I never fell along there."

■ It is well settled "that a municipality is not an insurer of the safety of pedestrians using the sidewalks within its boundaries, and is not required to construct an even surface for the highways and streets within its boundaries, but is only required to exercise ordinary care in constructing reasonably safe highways and sidewalks, and in maintaining them so. City of Dallas v. Moore, 32 Tex.Civ.App. 230, 74 S.W. 95; Davis v. Austin, 22 Tex.Civ.App. 460, 54 S.W. 927; [City of] Galveston v. Dazet, Tex.Sup., 19 S.W. 142." Houston Belt & Terminal Co. v. Scheppelman, Tex.Com. App., 235 S.W. 206, at page 207, point 2, opinion adopted by Supreme Court.

In City of Galveston v. Dazet, supra [19 S.W. 144], Chief Justice Stayton said in part: "If such defect in a street, as is shown in this case be sufficient to fix on a municipal corporation liability on the ground of negligence, there is probably not a street in a city or town in this state, however careful may be its officials, so kept as to relieve from liability for an accident occurring upon it; * * *. It is not for

every defect in a street that a municipal corporation may become liable if injury results from it; and it is only when the defect is such that a reasonably prudent man would not permit it to continue, because likely to produce hurt, that liability exists, and not then, if the defect be unknown, or be of such character as not likely to be observed by those charged with the duty of keeping streets in repair while in the exercise of ordinary care."

■■ We think the foregoing quotation is peculiarly applicable to the undisputed factual situation here presented. No witness placed the raised portion of the sidewalk at a greater height than $1\frac{3}{4}$ inches. The evidence is without dispute that Mrs. Stinnett had lived in this immediate vicinity for little more than a year, and that she had been along such sidewalk, and that she had not noticed the unevenness of the sidewalk at the point of the accident, and that she did not know of such defect. Her husband had likewise lived in this immediate vicinity for such period of time. He had been over such sidewalk as many as a hundred times or more, and he had noticed the unevenness at this particular place in the sidewalk, but he had never called it to his wife's attention. It is without dispute that the accident happened in daylight; it was not raining; the defect was open and visible; and there is no evidence that there was anything unusual about the situation surrounding Mrs. Stinnett at the time she fell. The question arises: Was the elevation of $1\frac{3}{4}$ inches in the sidewalk at the expansion joint such an obstruction that it rendered the sidewalk in a condition that was not reasonably safe for pedestrians using the same while in the exercise of ordinary care? We think not. Could reasonable minds differ as to such conclusion? We think not. Nor could it be foreseen or anticipated that injury would result to one using the sidewalk in the exercise of ordinary care. Since the evidence is without dispute that the elevation was $1\frac{3}{4}$ inches in depth and that it was patent and visible and in no wise concealed from the view of one using the sidewalk, it is clear to us that reasonable minds could not differ that such condition did not present a dangerous defect, and that one using the sidewalk, in the exercise of ordinary care, would not suffer injury in walking over the same, and that such sidewalk was in a reasonably safe condition. "It is the settled law of this State, and the law generally, that a mere

showing of negligence would not justify holding the one guilty thereof liable for damages. The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries. In order for it to be said that an injury proximately resulted from an act of negligence, the evidence must justify the conclusion that such injury was the natural and probable result thereof. *In order to justify such a conclusion, the evidence must justify a finding that the party committing the negligent act ought to have foreseen the consequences thereof in the light of the attendant circumstances.* (Italics ours)." Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, 849, points 1–4, and authorities therein cited. The rule is "that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission. * * * Actual anticipation is of course not in any sense a test; but what one should under the circumstances reasonably anticipate as consequences of his conduct." City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, points 2, 3, at page 670, 27 A.L.R. 927 (opinion adopted by S. Ct.) Could the City of Waco reasonably anticipate that such accident and resulting injuries, or a similar accident and resulting injuries, would happen to one using the sidewalk in the exercise of ordinary care? We think not. Batts v. City of Nashville, 22 Tenn. 418, 123 S.W.2d 1099; City of Memphis v. McCrady, 174 Tenn. 162, 124 S.W.2d 248; 43 C.J. 1010, sec. 1793; Davidson v. City of New York, 133 App.Div. 352, 117 N.Y.S. 185; Getzoff v. City of New York, 51 App.Div. 450, 64 N.Y.S. 636; Beltz v. City of Yonkers, 148 N.Y. 67, 42 N.E. 401; McCormick v. City of Racine, 227 Wis. 33, 277 N.W. 646; Hamilton v. City of Buffalo, 173 N.Y. 72, 65 N.E. 944; Rye v. City of Nashville, 25 Tenn.App. 326, 156 S.W.2d 460; Marshall v. San Jacinto Building, Tex.Civ.App., 67 S.W.2d 372; Sterling v. Community Natural Gas Co., Tex.Civ. App., 105 S.W.2d 776, points 1-7, at page 777, opinion by Chief Justice Gallagher. See also Hausman Packing Co. v. Badwey, Tex.Civ.App., 147 S.W.2d 856, writ refused; 43 C.J. 1085–1089, sec. 1855; Allhouse v. Borough of Wilkinsburg, 343 Pa.. 323, 22 A.2d 756; Watkins v. City of Raleigh, 214 N.C. 644, 200 S.E. 424; Ansley v. City of New Orleans, La.App., 168 So. 343; City of Staunton v. Kerr, 160 Va. 420, 168 S.E. 326; Gaver v. City of Columbus, 141 Neb. 832, 4 N.W.2d 924; Lerner v. City of Philadelphia, 221 Pa. 294, 70 A. 755, 21 L.R.A.,N.S., 614.

In view of the doctrine of foreseeableness announced by the Supreme Court, our view of the undisputed evidence is that the City could not foresee such accident and resulting injuries to Mrs. Stinnett, or a similar accident and resulting injuries to one using the sidewalk in the exercise of ordinary care, and that there is no room for ordinary minds to differ as to the conclusion to be drawn from such evidence, viewed in the most favorable light to the plaintiffs. It follows that we are of the opinion that the fact issue of actionable negligence was not raised by the evidence, and that the trial court erred in failing to give a directed verdict for defendant. Radley v. Knepfly, 104 Tex. 130, 135 S.W. 111, at page 113.

That the jury applied a different degree of care .to Mrs. Stinnett as that required of the City is quite obvious. To illustrate the jury found that the defect was not· so obvious that an ordinarily prudent person would have appreciated that it endangered his safety, and further found that such defect was of such character as was likely to be observed by the city officials charged with the duty of keeping the sidewalk in repair. We are not unmindful of the injuries that Mrs. Stinnett has suffered, and we deeply regret that we feel it our duty to reverse and render this cause, but it is our firm conviction that failure to do so would make the City an insurer under the facts here presented, and that we are not authorized to do. Because of the views herein expressed, the other points raised by appellant become immaterial.

The judgment of the trial court is reversed and rendered that plaintiff take nothing against the City of Waco.

Reversed and rendered.