226 P.2d 157

## CITY OF PHOENIX v. WEEDON et ux.

### No. 5208.

Supreme Court of Arizona.

Dec. 26, 1950.

Jack Choisser, City Atty., Howard W. Gibbons, Asst. City Atty., Phoenix, for appellant.

Leon S. Jacobs, of Phoenix, for appellees.

UDALL, Justice.

Plaintiffs-appellees Robert L. Weedon and Frances B. Weedon, husband and wife, obtained a judgment against the city of Phoenix, defendant-appellant, for injuries sustained by Mrs. Weedon in a fall caused by stumbling on a raised section of a public sidewalk within the city limits. The city has appealed from this judgment.

The facts, stated in the light most favorable to sustaining the judgment, are as follows: About 8:45 a.m. on June 8, 1948, Mrs. Weedon, aged 62, was unhurriedly walking from the lot where she customarily parked her car to her place of employment on North Second Avenue in the city of Phoenix. Plaintiff was proceeding in an easterly direction on the north side of Adams Street. When she reached a point directly in front of 324 West Adams (Ray Korte Automobile Agency), she had just passed a second person (later identified as Mrs. Cecilia Ann Doyle) walking in the same direction. She then moved over to her right hand edge of the walk to allow another person coming from the opposite direction to pass on her left. Plaintiff, who is a large woman, upon moving to her right, and while six or eight inches from the outer edge of the walk, stubbed her toe on a sharp rise in the pavement at the expansion joint, causing her to fall heavily and sustain serious fractures of both arms, as well as other minor sprains and bruises.

Plaintiff when testifying estimated the rise in the sidewalk to be from one and a half to two inches; Mrs. Doyle thought it was two inches; however, an engineer, testifying for the city, stated that he had measured the rise and that it was seven-eighths of an inch at its highest point and tapered down to nothing toward the inside of the walk. According to the testimony the sidewalk was five to six feet in width at that point.

There was no conflict in the evidence concerning the fact that Mrs. Weedon knew of this defect in the sidewalk and deemed it dangerous. She had known of its condition for approximately eight months, having used this walk almost daily in going to and returning from her place of employment in the license department of the county assessor's office. Mrs. Doyle testified that she had observed the same defective and dangerous condition continuously for more than two years preceding the accident, and that she had avoided this unsafe spot after having almost stumbled over it herself.

The complaint alleged that the city had failed and neglected to keep this sidewalk in good repair or in reasonably safe condition for pedestrians to travel thereon at the place of the accident; that defendant well knew or in the exercise of ordinary care should have known of said dangerous, defective and unsafe condition.

The city pleaded as defenses: (a) denial of plaintiff's allegations, (b) an affirmative allegation that, if the defect existed, it was a minor and inconsequential defect and defendant had no knowledge of its existence, and (c) contributory negligence on the part of plaintiff. The case, under proper instructions from the court, was submitted to a jury which returned a verdict in favor of plaintiffs for the sum of $2315. After entry of judgment thereon and a denial of defendant's motion for a new trial, this appeal was taken. It is not contended that the judgment was excessive.

Although the questions of plaintiff's contributory negligence and the city's lack of knowledge or notice of the defective condition in the sidewalk are raised on this appeal, the principal contention relied upon is that the condition of the walk, according to plaintiff's evidence most favorably construed, showed such a slight and inconsequential defect that the trial court should have held as a matter of law that the walk was reasonably safe, and defendant's motion for an instructed verdict should have been granted.

Defendant first contends, in substance, that plaintiff was guilty of contributory negligence. This defense was raised in the court below, submitted to the jury as a question of fact, Const. of Arizona, Art. 18, Sec. 5; Davis v. Boggs, 22 Ariz. 497, 199 P. 116, and determined adversely to defendant by the jury. If the judgment is supported by competent evidence it must be upheld. Atchison, T. & S. F. Ry. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167. Plaintiff candidly testified that she knew of the defect in the sidewalk, that she used the walk daily in going to and returning from her work, and that she had known of the defect for approximately eight months. She also testified that at the time of the accident:

" * * * I think my mind must have been distracted by passing these two ladies, therefore, I forgot it for a second or two * * *."

"I was passing two persons practically at the same time and my attention was diverted and I overlooked that * * *."

"I don't remember of noticing it that morning at all, because my mind was distracted by passing both of those women fairly close together."

The jury determined, upon the question being submitted to it, that this did not constitute negligent conduct on the part of plaintiff. Their determination of this fact is conclusive. City of Phoenix v. Mayfield, 41 Ariz. 537, 20 P.2d 296; 19

McQuillin's Municipal Corporations (3rd ed.), Sec. 54.125, p. 472; 40 C.J.S., Highways, §§ 268 and 270.

As Chief Justice Ross pointed out in the leading and well-reasoned case of Dillow v. City of Yuma, 55 Ariz. 6, 97 P.2d 535, there is a wide disagreement between the courts as to when a defect may or may not be declared harmless as a matter of law. In an annotation appearing in 119 A.L.R. 161 the editorial staff has collated representative and divergent cases on the subject. As would be expected the cases relied upon by the city for a reversal in the instant case are to be found under the "insufficient basis" list. For text statements on the province of court and jury see: 63 C.J.S., Municipal Corporations, § 942; 40 C.J.S., Highways, §§ 246 and 281; 25 Am.Jur., Highways, Sec. 587; 19 McQuillin's Municipal Corporations (3rd ed.) Secs. 54.202 and 54.204.

An examination of the reported cases of this type indicates that the courts of New York in favoring municipalities have probably gone furthest in their interpretation as to what degree of inequality in sidewalks must exist before a plaintiff is entitled to have the question of a city's negligence submitted to the jury. By judicial fiat it is nearly impossible in that jurisdiction for an injured party to recover except in the most flagrant case of municipal negligence. In California similar suits must be brought under the Public Liability Act of 1923, Stats. 1923, p. 675, Sec. 2, Deering's Gen.Laws 1931, Act 5619, and since a liability unknown to the common law was created thereunder their courts have uniformly held that in its application the statute must be strictly construed against such claims. See Whiting v. National City, 9 Cal.2d 163, 69 P.2d 990. Most of the California reversals are due to plaintiffs' failures to establish that the city had knowledge or constructive notice of defects as required under their restrictive statute. See Nicholson v. City of Los Angeles, 5 Cal.2d 361, 54 P.2d 725, and Whiting v. National City, supra. However, the California courts have no reluctance in submitting to the jury the issue of negligence when the degree of defectiveness is such that reasonable men could differ about it.

As is shown by the opinion in the Dillow case, supra, Arizona has no such controlling statute, and we have aligned ourselves with the majority of appellate courts by adopting a common-sense and middle-of-the-road approach to the matter. We regard the Dillow case as having established or reaffirmed the following principles of law:

(1) A municipality vested with power to improve and control its streets and sidewalks is liable for injuries sustained because of a failure to keep them reasonably safe for travel.

(2) No hard and fast rule can be laid down in such cases as to the character or extent of the defect in the street or

sidewalk necessary to form the basis for actionable negligence, but each case must stand upon its own particular facts.

■ (3) If it appears from the evidence that reasonable men might arrive at different conclusions with regard to whether the defect is sufficient in character or extent to form the basis of actionable negligence, the question is one of fact for the jury.

■ (4) If the defect is so slight and inconsequential that reasonable men could not differ, the question is one of law for the court.

■ (5) A city is not liable for injuries resulting from every slight defect in a street or sidewalk, i. e., it is not an insurer of its public ways and is not bound to keep them so as to preclude the possibility of injury or accident therefrom. See City of Phoenix v. Mayfield, supra; 19 McQuillin's Municipal Corporations (3d ed.), Sec. 54.11, p. 48; Kuntz v. City of Pittsburgh, 123 Pa.Super. 394, 187 A. 287.

■ If we assume, for the purpose of this appeal, that the actual measurement of the defect made by the city's engineer is correct and prevails over plaintiff's "estimates," see Balkwill v. City of Stockton, 50 Cal.App.2d 661, 123 P.2d 596; Terry v. Village of Perry, 199 N.Y. 79, 92 N.E. 91, 35 L.R.A.,N.S., 666; Kuntz v. City of Pittsburgh, supra, then the question presented is whether this variation of seven-eighths of an inch is a defect of such de-gree that the municipality's liability for negligence should be submitted to a jury. The true rule as to when it is a question of law for the court is succinctly stated in 19 McQuillin's Municipal Corporations (3rd ed.), Sec. 54.204, p. 612, as follows:

"Although the question of the municipality's negligence is generally a question of fact for the jury, yet where only one inference can be drawn from the evidence, the question of negligence becomes one of law for the court. In other words, when it is made to appear that the case is one upon which reasonable minds would not arrive at a different conclusion with regard to whether the maintenance of a particular defect in a street or sidewalk constituted negligence on the part of the municipality, the question may then be one of law." Cf. Rush v. City of Globe, 56 Ariz. 530, 109 P.2d 841.

■ In the instant matter the learned and experienced trial judge considered that it was a "shadow zone" case, which under the holding in the Dillow case, supra, is required to be submitted to a jury, and after verdict the court denied defendant's motion for a new trial. Ten of the twelve jurors believed that liability on the part of the city was adequately shown. That the sharp rise in the walk was dangerous was testified to by both plaintiff and Mrs. Doyle. It cannot be gainsaid that plaintiff fell as a result of stubbing her toe thereon and that she was seriously injured. Under these circumstances we cannot say, as a

matter of law, that reasonable minds might not differ on whether the defect which is here involved was dangerous.

In a similar case, Ray v. Salt Lake City, 92 Utah 412, 69 P.2d 256, 258, 119 A.L.R. 153, the Supreme Court of Utah stated: " * * * The whole situation is summed up in a statement quoted in the case of City of Tulsa v. Frye, 165 Okl. 302, 25 P.2d 1080, 1082. 'It would be a serious inroad on the province of the jury if, in a case where there are facts from which negligence may be reasonably inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever.' *To attempt to fix an arbitrary height or depth of irregularity applicable to all cases would be more intolerable than either.* * * *" (Emp. sup.)

See also Dillow v. City of Yuma, supra, and Balkwill v. City of Stockton, supra.

As to the matter of the city's alleged lack of knowledge or notice of the defect, this issue was squarely presented to the jury by the following instructions:

" * * * To constitute negligence on the part of the City of Phoenix, plaintiffs must prove to you by a preponderance of the evidence that: first, the sidewalk in question contained a substantial and dangerous defect, and, second, that the defendant, City of Phoenix, had knowledge of such substantial and dangerous condition, or that such condition existed for a sufficient length of time, from which you may infer that by the exercise of reasonable diligence the defendant should have known that said defect existed. Before these elements are proven to your mind by a preponderance of the evidence, there must be no recovery by the plaintiffs against the City of Phoenix."

* * * * * *

"There is no proof of actual notice to the City. However, notice may be implied, that is to say, if you find from the evidence that said sidewalk was in a dangerous and unsafe condition at the time of, and previous to the injuries complained of, for such a length of time that the City or its officers or agents, in the exercise of ordinary care and diligence, should have discovered a dangerous and unsafe condition therein and remedied it, then notice to the City is implied and the defense of lack of notice has not been sustained by the City."

The jury's determination of this issue, adverse to defendant, is binding upon this court. Judgment affirmed.

STANFORD, PHELPS and DE CONCINO, JJ., concur.

266

LA PRADE, Chief Justice (dissenting).

I am unable to agree with the disposition made of this case for two reasons: first, the recitation of the evidence contained in the majority opinion conclusively shows that the injuries sustained by appellee were proximately caused by the negligence (or physical instability) of the appellee in failing to take any precaution whatever to avoid a condition in the sidewalk with which she was thoroughly familiar; second, the evidence clearly established that the defect in the sidewalk complained of and as a result of which the appellee claims she was injured was so slight and inconsequential as not to form the basis of an action for negligence.

I agree that to hold that the facts here proved do not raise an inference of negligence on the part of the city requires a determination that the sidewalk was reasonably safe for pedestrian use, and that reasonable men under all the circumstances could not hold otherwise. I am firmly of the view that it was reasonably safe for use. No facts suggest that the city should have anticipated the accident. The plaintiff did not anticipate it. She had never complained to the city of the condition of the sidewalk; in fact, no one, as far as the record discloses, had ever complained of its condition though undoubtedly it had been traversed by thousands of people each month. This unevenness of the walk was not unusual but rather was and is a condition that exists in a thousand or more places

throughout the city. One needs only to take a stroll around the capitol building or the courthouse, or anywhere on Washington, Adams, Monroe, or Van Buren Streets, in the heart of the city of Phoenix, to see similar conditions. At most of the crosswalks in the city of Phoenix where the black asphaltic joins the concrete gutters you will find irregularities, some as much as 2 or 3 inches, where the asphalt spews up due to contraction and expansion occasioned by our extremes of temperature. This is a matter of common knowledge and understanding, and cannot be avoided unless cement is poured over reinforced steel. In our residential areas irrigated lawns are maintained up to the edge of the sidewalks; trees are grown adjacent to many miles of sidewalks. Under these circumstances the joint action of nature and the elements precludes the maintenance of smooth and level sidewalks.

The nature of concrete, when used for sidewalk construction, requires that it be laid in small squares or intersections with expansion joints placed for the purpose of attempting to compensate for expansion which occurs during the heat of the summer. The photographs of this particular sidewalk suggest to my mind that the pedestrian public was fortunate to have this concrete sidewalk. The risk of its continued use throughout the seasons should be borne by the users, in the absence of any substantial defects. To rule otherwise is to constitute the city of Phoenix and

every other incorporated town or city in the state of Arizona an insurer of the safety of its sidewalks.

What are inconsequential or trivial defects is not a question of fact. The majority opinion has cited only one case, Ray v. Salt Lake City, 92 Utah 412, 69 P.2d 256, 119 A.L.R. 153, holding that a defect such as the one under consideration is not as a matter of law inconsequential, when taking into consideration the use made of sidewalks, the materials from which they are made, and the effects of the elements upon them. The California case of Whiting v. National City, Cal.App., 61 P.2d 504, 507, referred to in the majority opinion was reversed by the Supreme Court of California, sitting en banc. 9 Cal. 2d 163, 69 P.2d 990. The District Court of Appeals had held that where the edge of one square of sidewalk was raised about ¾ of an inch above the surface of an adjoining square and about one inch from the bottom of the expansion joint between squares, such facts were sufficient to sustain a finding that the sidewalk was in a defective and dangerous condition rendering the municipality liable for injuries sustained by pedestrian falling because of such defect. This California case was tried to a judge without a jury, and the judge personally inspected the sidewalk. The appellate court (District Court of Appeals) relied on the finding of the trial court and said: "* * * we cannot as a matter of law say that the break in the walk did not constitute a defective condition which was dangerous for those using it. * * *"

The District Court then went on to quote from another California case to the effect that "No hard and fast rule can be laid down in cases of this kind, * * *." and concluded that the condition of the walk was always a question of fact and the determination of the jury was conclusive. Likewise in the case under consideration the majority have taken refuge behind the verdict concurred in by ten jurors.

The Supreme Court of California in its reversal, disregarding the question of sufficiency of notice upon the part of the city, said: "From the *record* herein, it must be concluded that the defect in the sidewalk in question was a minor defect; that no injury would ordinarily be suffered therefrom when ordinary care was exercised in using the sidewalk. * * * The holding in the Nicholson Case that the continued existence of a minor defect is in itself insufficient to impose liability upon the city for injuries resulting therefrom is recognized as the law *in other jurisdictions*. See Ford v. City of Kinsley, 141 Kan. 877, 44 P.2d 255; Hammer v. City of Philadelphia, 104 Pa.Super. 119, 158 A. 659; Johnson v. City of Ames, 181 Iowa 65, 162 N.W. 858; City of Dayton v. Fox, 254 Ky. 51, 70 S.W.2d 961; McQuillin, Municipal Corporations, vol. 7, § 2974, and cases cited. * * *" (Emp. sup.) (And

these cases actually are in point.) [ 9 Cal. 2d 163, 69 P.2d 991.]

What was the record before the Supreme Court of California? In this behalf, the court said: "In the present case the gradual rise from nothing to three-quarters of an inch in the pavement had existed for many years in the same condition and in a much traveled portion of the business section of the city. Many people walked daily over the sidewalk at that point. The defect was plainly visible. Its existence was common knowledge in the community. The plaintiff herself knew of it. She tripped over it in the day time while she was walking toward the exposed side of the rise, without anything to obstruct her vision of the sidewalk area. She had good eyesight, was an excellent walker, and frequently walked several miles in a day." This is almost the identical fact situation we have here. Plaintiff had walked over this defect daily for a period of eight months. Her excuse for not avoiding it was that she forgot its existence.

Under facts comparable to those in the present case, the following supreme courts have determined that a question of law was presented, and that minds of reasonable men could not differ thereon.

The Supreme Court of Wisconsin held that a difference of 2⅜ inches in the level between cement squares of sidewalk on a much travelled street presented no defects creating liability. McCormick v. City of Racine, 227 Wis. 33, 277 N.W. 646.

The Supreme Court of Texas in Stinnett v. City of Waco, 142 Tex. 648, 180 S.W.2d 433, affirmed its Civil Court of Appeals, 177 S.W.2d 323, which had reversed a judgment for plaintiff based on claimed negligence where there was a difference in elevation of 1¾ inches in a sidewalk slab at the expansion joint.

In Maxwell v. Kansas City, 1932, 227 Mo.App. 234, 52 S.W.2d 487, it was held that actual measurements prevailed over speculative evidence, and then held that the measured difference of 1¼ inches between concrete slabs was not actionable negligence.

In Bryant v. Village of Potsdam, 226 App.Div. 830, 235 N.Y.S. 599, the difference in elevations was 2 inches, and yet the court held the defect was too trivial to be negligent or actionable. In that case, too, the defect was actively and negligently created by the city itself in removing and replacing the section or slab of concrete, while in the case under consideration the defect was the result of use coupled with nature's slow and silent action.

In Walter v. City of Rockford, 1947, 332 Ill.App. 243, 74 N.E.2d 903, it was held that a defect in sidewalk which had a ¾ inch crack between 2 concrete sections with one of these sections about 1 inch higher than the adjoining section was not such a defect as would render the city liable for injury sustained by pedestrian who stumped her toe on raised section, lost her balance, and fell. For other Il-

linois cases see City of Chicago v. Bixby, 84 Ill. 82, 83; City of Chicago v. Norton, 116 Ill.App. 570; Powers v. City of East St. Louis, 161 Ill.App. 163; Owens v. City of Chicago, 162 Ill.App. 196.

The Supreme Court of Kansas in the case of Ford v. City of Kinsley, 1935, 141 Kan. 877, 44 P.2d 255, reversed a judgment where the alleged negligence showed that the sidewalk was composed of cement blocks 3 feet square, and that one of them sagged below the general level about ½ to ¾ inch. The court, "after looking into the decisions of other jurisdictions," concluded that the difference in elevation of the sidewalk was inconsiderable, and that the trial court should have ruled as a matter of law that the city was not liable.

Our case of Dillow v. City of Yuma, cited in the majority opinion, is no authority for the proposition that any unevenness or irregularity in a sidewalk which produces injury is always a question of fact for the jury. The court specifically said: "Whether an injury caused by a defect in a street or sidewalk is actionable or whether the defect is so slight and inconsequential as not to form the basis of an action for negligence *is, or should be, primarily a question for the court; * * *."* (Emp. sup.) [55 Ariz. 6, 97 P.2d 535, 536.]

The court there quoted with approval from the case of Shugren v. Salt Lake City, 48 Utah 320, 159 P. 530. In the latter case it was said: "* * * It seems to us that in case it is made to appear that reasonable men might arrive at different conclusions with regard to whether the maintenance of the particular defect in a sidewalk or street constituted negligence on the part of the municipality, the question should be submitted to the jury. * * * *Of course there may be defects so slight and unimportant, or by reason of their location may be so unimportant, that a court might well say as a matter of law that the maintenance thereof did not constitute negligence on the part of the municipality. * * *

"We feel constrained to add that it must be obvious to all that not every raise or projection in a street or sidewalk can be held objectionable. * * *"* (Emp. sup.)

With this statement of the rules applicable before it the court proceeded to apply them to the facts. What were the facts? The plaintiff had been injured by falling in a hole in the sidewalk 2 inches in depth, 24 inches in length, and 4 or 5 inches in width, the bottom of the hole being covered with gravel or loose cement. The court then said, in referring to this defect: "* * * The defect was not so slight that the court could say it was not dangerous. At most, it was in what one court designates as 'a shadow zone,' and every such case should be left to the jury. * * *"* *Actually the court passed on the question as a matter of law.*

The facts in the instant case are not in my judgment in any "shadow zone" or

anything approaching it. If this slight defect which is physically bound to occur and recur in the sidewalks of the city of Phoenix is to be deemed negligence on the part of the city, then there is scarcely a sidewalk in the city that is reasonably safe. The law should not prescribe any such measure of duty so impossible of fulfillment, or a rule of liability so unjust. On a set of facts upon which "reasonable men" could not differ I prefer to align myself with those hundred or more judges of courts of last resort, rather than to be bound by the findings of this jury. It was the duty of the city to maintain the sidewalk so that it would be reasonably safe for pedestrians. I believe that the rule applicable to the standard of care to be observed is correctly stated in Reed v. Tarentum Borough, 213 Pa. 357, 62 A. 928 (a case in which the plaintiff was injured by a fall occasioned by striking his foot against the edge of a stone projecting above the adjoining stones in the sidewalk). "* * * The *law* fixes the standard of duty as reasonable care, and it cannot be left to the judgment or caprice of a jury to establish any other standard. * * * and reasonable safety, as in the case of machinery and methods, is to be determined by the standard of ordinary usage. * * *" (Emp. sup.) The question in this case is whether the sidewalk was reasonably safe. This was to be determined by the *standard of ordinary usage and not by a standard the jury might set up.*

It had never occurred to the plaintiff and the other thousands of people who had used this particular sidewalk that they were wanting in reasonable prudence in not reporting the condition to the city. If this defect was such that it might probably or possibly produce hurt, surely someone would have recognized it and reported it. The public is realistic. Under the times and circumstances, to them, it was a good sidewalk. It met the standards of ordinary construction and maintenance.

The sum and substance of the rule herein established by the majority opinion is— "It is impossible for this court to prescribe exact limitations from which, in all cases, it may be determined what character of defect in a public street constitutes negligence on the part of a municipality. Given a defect and consequent injury, the question of negligence must be submitted to the jury."

In the majority opinion it is stated that the Dillow case established or reaffirmed five principles which are set out, and presumably the majority opinion reaffirms them. Their principles 3 and 4 mean nothing at all. Any lawyer interested in this type of case can have prints made from the films in this case on file with the clerk of the superior court of Maricopa County. Prints from these films, together with the majority opinion, if presented to any trial court, will insure plaintiff getting his case submitted to the jury, and its determination of negligence will be conclusive on

this court, under the rule established by the majority opinion in this case.

The case should be reversed with directions to dismiss plaintiff's complaint.