460 P.2d 179

**ARIZONA STATE HIGHWAY DEPARTMENT, an agency of the State of Arizona, Appellant,**

v.

**August W. BECHTOLD and Jean M. Bechtold, his wife, Appellees.**

**No. 9651.**

Supreme Court of Arizona,
In Division.
Oct. 23, 1969.
Rehearing Denied Dec. 9, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., Rod McDougall, Asst. Atty. Gen., Phoenix, for appellant.

Cunningham & Tiffany, by Michael E. Tiffany, Phoenix, for appellees.

LOCKWOOD, Vice Chief Justice.

This action arose out of a traffic collision between August W. Bechtold, (appellee) and Lawrence J. Kulik at the intersec-

tion of McDowell Road and the Black Canyon Freeway access road in Phoenix, Arizona. The collision occurred as a result of a faulty traffic signal which gave a green indication to both appellee and Kulik. Although Kulik, his parents, the City of Phoenix and the Arizona State Highway Department were originally joined as defendants, the action was dismissed as to the others and proceeded to trial by jury only against the Arizona State Highway Department (appellant). The jury returned a verdict in favor of appellee in the amount of $5,000. This verdict was subsequently reduced to $3,650 and judgment was entered on the verdict. From an order denying defendant's motion for judgment notwithstanding the verdict and in the alternative motion for a new trial, Arizona State Highway Department appeals.

The facts as presented at the trial are as follows: On July 2, 1963, sometime after 10:30 P.M., appellee was returning home from work. He entered the eastern access road of Black Canyon Freeway about five blocks south of McDowell Road, traveling north toward the intersection. As he approached the intersection, he observed that the traffic light controlling his direction of travel changed from red to green. He entered the intersection without stopping and the left side of his truck was struck by an eastbound automobile driven by Lawrence J. Kulik. As a result of this collision appellee's panel truck was demolished and he sustained multiple cuts and bruises.

At trial, evidence showed that at the time of the collision the traffic control signal was indicating green both for the northbound traffic on the eastern access road, the direction in which appellee was traveling, and for the eastbound traffic on McDowell crossing the access road, the direction in which Kulik was traveling. The evidence also showed that in addition to the accident giving rise to this case, there had been two other traffic accidents at this intersection earlier that same day.

At some time prior to 4:30 P.M., some six hours prior to appellee's accident, the first accident occurred at this intersection. Following the first accident the Phoenix City Police Department notified the Arizona State Highway Department of a malfunction in the traffic light. Vern Larson, a repairman employed by appellant, responded to the call and upon arriving at the intersection discovered that there was a flickering green light for the eastbound traffic on McDowell Road. The flickering light indicated to Larson that the malfunction was in an SR–4 relay located in the control box to the signal. This relay regulated the phase of the control signal—red, amber or green—and when one malfunctioned it was merely unplugged and a new one inserted. Larson replaced the SR–4 for the flickering signal and noted that the flickering ceased. He then visually checked the timing controllers in the control box for malfunction, visually checked the repaired light and then drove through the intersection from all directions to see if the other lights were working properly.

Although Larson had no formal education in electronics, he had taken a correspondence course and had had on-the-job training. He testified that at the time he replaced the SR–4 relay he had with him a voltmeter, an ohmmeter and an ammeter, which could have been used to more thoroughly check the control box. However, it was not department policy to do so, and therefore he did not use them. He considered the repair completed and left the area by 5:45 P.M.

Later in the evening of July 2, 1963, there was a second accident at this intersection. Although there is little information in the record regarding this accident, it appears that it also was the result of a malfunctioning traffic signal. The accident was investigated by the Phoenix Police Department, but the fact of the malfunctioning light did not come to appellant's attention until an insurance claim against the State was made several weeks later. Then, in a letter from Hornbeck, Signal Technician, to Thompson, Traffic Civil Engineer, Hornbeck stated that the vehicular collision

which occurred some two or three hours prior to the Bechtold accident " * * * was caused presumably by malfunctioning traffic signals." This letter was admitted in evidence over appellant's objection.

Following the collision involving appellee, at about 11:00 P.M. on July 2, 1963, the State Highway Patrol reported to Hornbeck, who was on call at the time, that there was no red indication for northbound traffic on the Black Canyon access road. Hornbeck found the malfunction was caused by a second faulty SR–4 relay and replaced it, as Larson had done earlier in the day. This corrected the trouble. Hornbeck visually checked the lights and timers at the intersection and completed the call by 11:20 P.M.

Approximately eighteen months prior to these events, in January 1962, the controls at this intersection had been completely revamped and the clock-like mechanical timers which controlled the duration of the signals replaced with a complicated electronic computer-type control. This system detected the traffic flow from all directions through the intersection via rubber treadles in the road surface, and automatically adjusted the red and green signal duration for optimum traffic flow. An integral part of this control system are the SR–4 relays, two of which malfunctioned and were replaced on July 2, 1963.

At no time since these controls were revamped in January of 1962 had they been replaced, repaired or even checked except when a malfunction was reported. On July 2, 1963, neither Larson nor Hornbeck did more than replace the then malfunctioning part and visually check the lights and timing, even though they had with them instruments which could have been used to more thoroughly check the control box. The record showed that at no time prior to this accident did the appellant have in effect any type of preventive maintenance program in regard to traffic control systems. Evidence as to a subsequently initiated maintenance program was excluded by the trial judge.

In this appeal, appellant presents four questions for review. We will consider appellant's question number three first. Here, appellant asks whether it is reversible error for a trial judge to admit evidence which was outside the issues as formed in the pre-trial order.

The pre-trial order, entered September 16, 1966, stated that appellee claimed negligence " * * * based on [appellant's] *failure to repair a defective traffic light after they had notice* that it was defective because of an accident earlier that evening." (Emphasis supplied.) The evidence complained of showed that prior to appellee's accident, appellant had no program of preventive maintenance for traffic signals under its control.

Although at first blush it might appear that such evidence would be outside the pre-trial order, under the circumstances in this case we believe that it was within the discretion of the trial judge to admit or exclude it during the trial.

The admitted purpose of the pre-trial order is to simplify issues and shorten trial time. But such orders are not absolute and do not completely jell issues in an action. Zuniga v. City of Tucson, 5 Ariz. App. 220, 425 P.2d 122 (1967). "[A]s with all rules problems, the dominant purpose of the courts must be to do justice rather than to vindicate procedural rules." 1A Barron & Holtzoff, Federal Practice and Procedure, § 473, at 851 (Wright ed. 1960). Rule 16, itself provides that the trial judge may modify the pretrial order at the trial to prevent manifest injustice to the litigants. Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965). Additionally, "[f]ailure formally to amend the pre-trial order is not error where the court admits evidence to the same effect as if the order had been amended." 3 Moore, Federal Practice ¶ 16.-20 at 1138 (2d ed. 1968).

Rule 15(b) provides for liberal amendment of the pleadings so that they conform to the evidence. Since all the rules must be read together, it seems clear that Rule 16 must be read in light of Rule

15(b) relating to amendments to conform to the evidence. Bucky v. Sebo, 208 F.2d 304 (2d Cir. 1953).

 In this case, during discovery procedures appellee questioned both Hornbeck and Larson, appellant's employees, extensively regarding a preventive maintenance program. Therefore appellant could not have been completely surprised by this evidence. Had appellant been unprepared to defend against it, counsel could have moved for a continuance of the trial, which he did not do. We cannot say the court abused its discretion in permitting evidence of a lack of a preventive maintenance program as relevant to the issue of appellant's negligence.

Appellant next questions the sufficiency of the evidence to support a jury finding that the State was negligent in the repair and maintenance of the traffic signal; and the sufficiency of the evidence to support a finding that such negligence was the proximate cause of appellee's injuries.

The evidence and inferences therefrom must be reviewed by this Court in the light most favorable to sustaining the judgment of the lower court. When viewed in this manner, if there is sufficient evidence in the record to support the jury's verdict, it must stand. Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370 (1962).

 We held in Stone v. Arizona Highway Comm'n., 93 Ariz. 384, 381 P.2d 107 (1963), that the State may be liable in tort for the negligent acts of its employees. In cases of this nature, the State, like a municipal corporation, is not an insurer of the safety of streets and highways under its control, but does have a duty to maintain and repair them in a manner which will keep them reasonably safe for ordinary travel. City of Phoenix v. Weedon, 71 Ariz. 259, 226 P.2d 157 (1950); Rush v. City of Globe, 56 Ariz. 530, 109 P.2d 841 (1941); State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967). This includes a duty to maintain and repair traffic control signals in a manner which will keep them reasonably safe. Vidrine v. General Fire and Casualty Co., 168 So.2d 449 (La.Ct. App., 1964).

 Some six hours before appellee's accident, appellant was notified that the traffic signal was malfunctioning. Vern Larson went to the intersection and made some repairs. There was evidence regarding what Larson did, what he did not do, and what he could have done. We hold that there was sufficient evidence from which the jury could have found that Larson's repair was negligently incomplete. Additionally, we hold that there was sufficient evidence in the record from which the jury could have found that this negligently performed repair was the proximate cause of appellee's accident.

 Proximate cause is most simply defined as that cause without which the accident would not have happened. It is a question of fact for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was the proximate cause of the injury complained of. Inspiration Consol. Copper Co. v. Conwell, 21 Ariz. 480, 190 P. 88 (1920). The negligence complained of need not be the sole cause, but need only be a proximate cause to support a verdict for the plaintiff. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201 (1949).

Appellant argues that there was no evidence from which the jury could have found proximate cause, because " * * * *with* or *without* the repair and inspection at 4:30 P.M., *the same result* would have occurred * * *." (Emphasis by appellant.) We do not agree.

Larson testified that after he replaced the first SR–4 relay the only inspection he performed on the control box was visual, even though he had tools with which he could have conducted a more thorough examination. Although nobody could have determined as an absolute fact when a particular part in the control box would malfunction, this is not required. We will not attempt to set absolute requirements as to the degree of certainty necessary to support a jury's verdict. Cf. City of Phoe-

nix v. Weedon, supra; Dillow v. City of Yuma, 55 Ariz. 6, 97 P.2d 535 (1940).

Appellant's final contention is that reversible error was committed by the trial judge in admitting into evidence a letter (Exhibit #5) written by Hornbeck to Thompson, appellant's Civil Traffic Engineer. This letter was written some two months after appellee's accident occurred. In referring to the accident at 6:30 P.M. on July 2, 1963, the letter stated:

"The vehicular collision preceding the one mentioned above by two or three hours at the same intersection was caused presumably by malfunctioning traffic signals. This trouble was not reported to any of the signal technicians."

At trial appellee offered this letter as "a substantive admission on the part of [appellant] through a person in supervisory capacity." Appellant objected on the grounds that it was "incompetent, highly prejudicial, and invading the province of the jury."

Appellee contends that the letter is admissible either as being outside the hearsay rule or as an exception to it—an admission of a party opponent. Professor Brown states that a writing is not hearsay if it:

"is offered to prove a state of mind or quality of conduct (knowledge, belief, good faith, reasonableness, diligence, motive etc.) of a person, and is not offered to prove the truth of the words * * * written * * *." Brown, The Hearsay Rule in Arizona, 1 Ariz.L.Rev. 1, 6, (1959).

It seems clear to us that appellee's only object in offering the letter was to prove the truth of the words contained in it, and, therefore, it is hearsay. Nor can it be considered in the nature of an admission of a party or his agent. It is from one agent to another, written to aid the latter in responding to an insurance claim against the employer of both. Although there is some law contra, (see, McCormick on Evidence, § 244 at 519) we believe that the better

rule applicable here is set out in the Restatement of Agency.

"§ 287 Reports to Principal

"Statements by an agent to the principal or to another agent of the principal are not admissible against the principal as admissions; such statements may be admissible in evidence under other rules of evidence.

"Comment:

"a. Statements of agents which the principal has authorized to be made to third persons are admissible against him under the same circumstances as those made by himself, since if the principal is willing to give them to the world it is not unfair that they should be subsequently used against him. On the other hand, statements made by the agent to the principal or to other agents are statements which the principal does not intend to be given to the world or to be considered as his statements. He does not in any way vouch for their truth. The historical fiction of the identity of principal and agent is not operative in transactions between them." Restatement (Second) of Agency § 287 (1957).

Thus it was error to admit the letter.

However the error was harmless. This evidence could only have prejudiced appellant if it had proved that the State had prior knowledge of the malfunctioning traffic signal which "presumably caused" the 6:30 P.M. accident. The letter clearly states that this malfunction was not reported to appellant until after appellee's accident. Thus the error did not prejudice appellant. See Ariz.R.Civ.P., Rule 61, 16 A.R.S.

For the foregoing reasons the verdict and judgment of the lower court is hereby affirmed.

UDALL, C. J., and McFARLAND, J., concur.