493 P.2d 515

CITY OF GLENDALE, a political subdivision of the State of Arizona, Appellant and Cross-Appellee,

v.

Glen BRADSHAW, By and Through Corena Bradshaw, Guardian of the Person and of the Estate of Glen Bradshaw, an Incompetent, and Corena Bradshaw, his wife, Appellees and Cross-Appellants.

No. 1 CA–CIV 1503.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 1, 1972.

Rehearing Denied March 6, 1972.

See 494 P.2d 383.

Review Granted April 25, 1972.

Jack M. Anderson, and John S. Schaper, Phoenix, for appellant and cross-appellee, City of Glendale.

Divelbiss & Gage, by G. David Gage, Phoenix, for appellees and cross-appellants.

J. LaMar Shelley, Mesa, and Snell & Wilmer, by Mark Wilmer, Phoenix, for the amicus curiae, League of Arizona Cities and Towns.

STEVENS, Presiding Judge.

This is an appeal from a judgment entered in favor of the appellee, Glen Bradshaw (herein referred to as the plaintiff), in a personal injury action arising out of a one-car accident that occurred at the intersection of Royal Palm Road and Fifty-fifth Avenue, within the Glendale city limits, on the morning of February 23, 1969. Mrs. Bradshaw filed a cross-appeal in relation to the denial of her claim for loss of consortium.

·The car was being driven in a northerly direction on Fifty-fifth Avenue by Veryl Evelyn Fandrey, one of the defendants in this proceeding, when it struck a mound of dirt located just north of the end of the pavement on Fifty-fifth Avenue and vaulted into the air before finally coming to rest in an adjoining field with the rear wheels of the automobile 66 feet north of the top of the mound. Fifty-fifth Avenue ended at Royal Palm Road and there was no warning sign indicating that the traffic must change direction or that Fifty-fifth Avenue ended at this point.

The plaintiff was a passenger in this automobile and sustained serious injuries to his head which required extensive surgical procedures. These injuries subsequently resulted in the loss of his left eye, severe brain damage and permanent disability.

A suit was filed against Mrs. Fandrey, alleging that she was negligent in her operation of the vehicle which was involved in the accident, and against the City of Glendale (herein referred to as the City), alleging that it was negligent in failing to properly maintain a warning sign on Fifty-fifth Avenue at a point a sufficient distance south of where the accident occurred to prevent such occurrences. After a two-week trial, the jury returned a verdict in favor of the plaintiff which was against both defendants in the amount of two hundred and eighty thousand dollars ($280,000.00), and a judgment was subsequently entered thereon. The City has appealed from this judgment and from the order of the trial court denying its Motion for New Trial and Motion for Judgment n. o. v.[1]

The City has presented the following issues for our consideration on appeal: First, a series of questions which relate to the liability of the City under the facts and evidence in the case at bar, and second, a question as to the propriety of the determinations and rulings of the trial court with regard to the Bradshaw-Fandrey covenant which limited the amount of the latter's liability. During the initial phases of trial, it had become apparent that an agreement had been reached between the plaintiff's counsel and counsel for Mrs. Fandrey under the terms of which her liability was limited to fifty thousand dollars ($50,000.00). Counsel for the City strongly objected to this arrangement throughout the course of the proceedings and has raised similar questions on appeal.

We will consider these questions in the order presented by the appellant.

---

1. This opinion deals solely with the questions brought to the Court on appeal by the City of Glendale as appellant and by Mrs. Bradshaw as cross-appellant.

## CITY'S LIABILITY

It was first argued that no evidence was presented which could justify the submission of the issue of the City's liability to the jury. The City's position was that, as a matter of law, it had not been shown that there was a duty on the City to maintain a warning sign on Fifty-fifth Avenue and that, even if the negligence of the City was assumed, under the uncontradicted facts and evidence of this case such negligence was not a proximate cause of the plaintiff's injuries. Based upon the foregoing grounds, it is the City's contention that the trial court committed reversible error in failing to grant its Motion for Directed Verdict.

Our review of the pertinent case law with regard to these initial issues raised by the City indicates that the duty of a municipality to properly maintain its streets for public use has been previously established in a manner which is inconsistent with the appellant's argument on appeal.

> "In cases of this nature, the State, *like a municipal corporation,* is not an insurer of the safety of streets and highways under its control, *but does have a duty to maintain and repair them in a manner which will keep them reasonably safe for ordinary travel.* (citations omitted) *This includes a duty to maintain and repair traffic control signals in a manner which will keep them reasonably safe."* Arizona State Highway Department v. Bechtold, 105 Ariz. 125, 129, 460 P.2d 179, 183 (1969). (emphasis added)

The Bechtold case was based upon evidence of an improper repair of a traffic control signal which evidence warranted the finding that an employee of the Highway Department was negligent and that such negligence was the proximate cause of the accident in question.

In State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967), the Court held that the State is liable for injuries caused by its failure to properly post warning signs as to a narrow bridge on the highway. The State had unsuccessfully argued that there was an absence of a causal relationship between the failure to give warning as to the bridge and the accident which resulted in the plaintiff's injuries. It was contended that the plaintiff's negligence (odor of alcohol on his breath when he was removed from the car) was the superseding cause of the accident and that the Court should rule as a matter of law that any negligence of the State could not have been a cause of the plaintiff's injuries.

And finally, in Rodgers v. Ray, 10 Ariz. App. 119, 457 P.2d 281 (1969), while the Court saw no possibility of liability for the failure of the defendant county to install a specific type of traffic control device, in that case a stop sign, it was held that there is a duty to warn of dangerous conditions on the public roads, which are not obvious, by the posting of a proper warning sign.

■ The Court is of the opinion that these authorities when viewed in light of the circumstances in the instant case establish the duty of the City, as a matter of law, to maintain and repair traffic control devices in a manner which will keep the streets and highways safe for ordinary use.

■■ The City has made the additional argument that its negligence, even if established, does not expose it to liability because such negligence was not a proximate cause of the plaintiff's injuries. We disagree.

> "Proximate cause is most simply defined as that cause without which the accident would not have happened. It is a question of fact for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was the proximate cause of the injury complained of. Inspiration Consol. Copper Co. v. Conwell, 21 Ariz. 480, 190 P. 88 (1920). The negligence complained of need not be the sole cause, but need only be a proximate cause to support a verdict for the plaintiff. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201 (1949)." Arizona · State

Highway Department v. Bechtold, supra, 105 Ariz. at 129, 460 P.2d at 183.

As far as proof of proximate cause is concerned:

"All that is required in negligence cases is for the plaintiff to present probable facts from which negligence and causal relations may be reasonably inferred." E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 453, 466 P.2d 740, 747 (1970).

On the basis of these cases, and because we view the evidence on the issue of negligence in a light most favorable to the party who prevails in the trial, Shell Oil Company v. Collar, 99 Ariz. 154, 407 P.2d 380 (1965), it is the decision of this Court that the trier of fact was not in error when it determined that there was sufficient evidence from which negligence and a causal relation which led to the plaintiff's injuries could be inferred, i. e., that the negligence of the City was at least one of the proximate causes of the plaintiff's injuries.

A final argument made by the City in an attempt to limit its liability cites City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323 (1954), as authority for the proposition that a municipality's duty is limited to the exercise of ordinary and reasonable care to maintain its streets in a safe condition for *lawful and ordinary use by the public*. It is the City's position that the vehicle in this case was not being operated in a lawful manner for the follow reasons: (1) The driver of the car, Mrs. Fandrey, was traveling in excess of the lawful speed of twenty-five miles per hour, and (2) The evidence presented indicated that Mrs. Fandrey had consumed a substantial amount of liquor during the evening immediately prior to the accident. Assuming *arguendo* that these statements of fact are adequately supported by the record, we are unable to agree with the proposition of law advanced or the basis thereof to the effect that a municipality owes no duty to those who use its streets in an unlawful manner.

The appellant relies upon the Lopez decision and the following language taken therefrom:

"* * * Must the city, under the duty attributable to an ordinarily prudent person, construct and maintain its streets for unlawful use? In the Mayfield case, supra, it is pointed out that the city's duty extends only to those 'exercising ordinary care and caution'. Persons making unlawful use of the streets are not in this category." Supra at 150, 268 P.2d at 325.

This language was most recently interpreted in Collins v. County of Maricopa, 15 Ariz.App. 354, 356, 488 P.2d 991, 993 (1971), (review denied), and we are in agreement with the conclusion reached therein.

"It appears from reading only the above quotation that the Lopez case stands for the proposition that the city is automatically exonerated from tort liability to persons making unlawful use of its streets, but in our opinion that is not the law in this state, nor the proposition for which Lopez stands. In the Lopez case, the plaintiff was asserting that the city had a duty to place a sign to warn the plaintiff that the street upon which he was riding narrowed from a four-lane to a three-lane highway. The plaintiff in that case was driving 65–75 miles per hour in a 25-mile-per-hour speed zone. The Supreme Court in Lopez held that if the street was maintained and constructed in such a manner that the road was safe for travel at lawful speeds, the city was not liable if the road was unsafe for travel at an unlawful speed and an accident occurred. In that case, under those facts, the proximate cause of the accident, if the road was found safe for travel at lawful speeds, would be the unlawful speed of the car and not the construction of the road."

The City preserved its right to raise an issue on appeal with regard to the law in

Lopez by specifically objecting to the refusal of the trial court to instruct the jury pursuant to defendant's requested instruction number seven.[2] City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411 (1957). The question remains as to the sufficiency of this objection as well as the validity of the proposition of law advanced in instruction number seven.

As to the sufficiency of the objection, Rule 51(a), of the Rules of Civil Procedure, 16 A.R.S., provides in pertinent part that:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

The City's objection to the trial court's failure to give this instruction was stated as follows:

" * * * upon the grounds that the holding in the City of Phoenix v. Lopez case, 77 Ariz. 146, 268 P.2d 323 [sic] is to the effect that the City is under a duty to use reasonable care in the signing of its streets and ways only to those motorists who are lawfully using the public ways."

The grounds advanced by the City as authority for its objection to the trial court's failure to give requested instruction number seven are incorrect as a matter of law. The Lopez decision does not stand for the proposition asserted by the City, i. e., " * * * that the City is under a duty to use reasonable care in the signing of its streets and ways *only to the motorists who are lawfully using the public ways.*" (emphasis added). Inasmuch

as we agree with the Collins case in this regard, it is the opinion of this Court that the provisions of Rule 51(a) are not satisfied by an objection based upon an incorrect statement of the law.

"The purpose of this rule requiring distinct statements as to the matters objected to is so that the court may not be led into involuntary error." Nielson v. Flashberg, 101 Ariz. 335, 340, 419 P. 2d 514, 519 (1966).

While we agree that the form of the City's objection meets the requirements of Rule 51(a), in view of the Collins case and the interpretation of Lopez found therein, we hold that the objections were not well taken. Though Lopez was often interpreted prior to Collins in a fashion similar to the argument advanced by the City, it is a well-recognized hazard of the profession that difficult cases are sometimes interpreted by appellate courts in a manner not in accord with the posture in which the case is viewed by the practicing attorney. For these reasons, we hold that the objection noted above was not well taken and it was not error for the trial judge to refuse to give the instruction in question.

The City also objects to the failure of the trial court to give its requested instruction number three which deals with intervening-superseding cause. That instruction provided that:

"If a party guilty of an act of negligence which creates a passive condition might reasonably have anticipated subsequent intervening conduct causing damage as a natural and probable consequence of his own negligence, the connection between his negligence and the injury is not broken; but, if the act of

---

2. The instruction offered by the defendant City which the trial court refused to give was as follows:
    "The City of Glendale is under a duty to maintain its streets only for those individuals who use the streets in a lawful manner. This duty is to both the driver and the occupants of an automobile. Therefore, if you find that the

car being driven by Verle [sic] Evelyn Fandrey and occupied by Glen Bradshaw was, at the time of the accident, being used in violation of the law, and if you find that had the car been driven in a lawful manner this accident would not have occurred, you must find in favor of the City of Glendale on the issue of liability."

a third person, which is the immediate cause of the injury *is such as in the exercise of reasonable diligence would not be anticipated,* the connection is broken and the first act or omission is not the proximate cause of injury." (emphasis added)

Inasmuch as the negligent driving of Mrs. Fandrey is that type of act which the City should have reasonably anticipated, State v. Watson, supra, it was harmless error for the trial court to refuse to give this requested instruction since there was a question of fact for the jury to determine, i. e., whether any negligence of the City was a proximate cause of the accident.

■ Note also that Mrs. Fandrey's conduct fails to satisfy the test for a superseding cause for the same reasons.

"For an intervening cause to be a superseding cause it must be a cause which could not have been reasonably foreseen or anticipated by the defendant." City of Phoenix v. Schroeder, 1 Ariz.App. 510, 516–517, 405 P.2d 301, 307–308 (1965).

The instruction was properly refused, as was the City's instruction number four for the same reasons.[3]

■ While the City's objection to the trial court's deletion of the first sentence of its requested instruction number five[4] is a valid one in that the portion deleted therefrom is a correct statement of the law, it is the opinion of this Court that the effect of such a statement would have unduly prejudiced the jury without further explanation of the context from which the statement was taken. The remainder of the subject instruction adequately informed the jury of the City's duty to maintain its streets and roadways without suggesting that the City, because it is not an "insurer", has no duty at all to properly maintain its streets and roadways.

This Court is not unaware of additional questions raised by the appellant as grounds for a reversal in this case but is of the opinion that a discussion thereof is not essential to the proper disposition of this matter.

It is the opinion of this Court that the question of the City's liability and the tests which must be followed to determine the extent of such liability where properly followed by the trial court in its rulings on requested instructions and questions of law related thereto. The duty of the City to the plaintiff was properly established and presented to the jury.

## THE FANDREY—BRADSHAW COVENANT

It was noted earlier that the City strongly objected to an agreement between its joint tort-feasor, Mrs. Fandrey, and the plaintiffs, which limited the amount of liability that the Fandreys would be exposed to regardless of the form of the jury's verdict. The agreement was actually a covenant not to sue or execute upon an alleged

3. Defendant's requested instruction number four:

"An intervening cause is a new and independent [sic] force which brakes [sic] the causual [sic] connection between the original negligence and the injury, and itself becomes the direct and superseding cause of the injury.

"If you find from a consideration of all the evidence that the injuries sustained by the Plaintiff were proximately caused by a person other than the City of Glendale and that the negligence of the Defendant, the City of Glendale, [sic] not proximately cause or contribute to cause the injury to the Plaintiff, then the Plaintiff is not entitled to recover from the Defendant, the City of Glendale."

4. Defendant's requested instruction number five:

"~~The City of Glendale is not an insurer of the safety of persons using its streets or roads.~~ The City is not obligated to keep the streets or roads in absolutely safe or perfect condition or free from every defect that might possibly lead to injury. A city has a duty to use reasonable care to construct and maintain its streets and ways in a reasonably safe condition for ordinary ~~and lawful~~ use."

The instruction was given as modified by deletion.

"bad faith" or "excess" claim against the Fandreys and their insurance company which arose, according to the plaintiff's counsel, as a result of the insurer's initial refusal to settle during preliminary negotiations for the full amount of the policy.

The covenant specifically provided as follows:

"[T]he Guardian would execute a covenant not to execute (not a release) in the usual form in favor of defendants Fandrey and Allstate Insurance Company and would agree not to sue upon or execute relative to (not release) the 'bad faith' or 'excess' claim against the Fandreys and Allstate Insurance Company, with the following conditions: said $50,000.00 would be paid only at the conclusion of all litigation, and only if there is a final ultimate defense verdict in favor of all defendants in the pending litigation; if there is a judgment only against defendants Fandrey in any sum, said $50,000.00 would also be paid by Allstate at the ultimate conclusion of all litigation; and if an ultimate final judgment is entered against defendant City of Glendale (either alone or jointly with defendants Fandrey), said $50,000.00 will not be paid by Allstate, on behalf of the Fandreys, but the Guardian will agree, in that event, to execute only against the City of Glendale and its insurance carriers."

In response to this agreement, the City argued initially that the trial court should have declared a mistrial after learning of the settlement; or, in the alternative, that the action should have been dismissed as to the Fandreys. As support for this argument, the City cites Opinion No. 70–18 of the Ethics Committee of the State Bar of Arizona which was issued on 28 July 1970. This opinion dealt with an agreement between plaintiff's counsel and counsel for two of the three defendants by which the plaintiff would accept a payment of ten thousand dollars ($10,000.00) from the insurance company for the defendants prior to trial and in return therefor, the plaintiff

agreed not to execute against the assets of these defendants in excess of the settlement amount. An alternative agreement was offered which provided that in the event of a judgment against all defendants execution would be levied against only the other defendant unless the insurance limitation for such defendant failed to satisfy the judgment.

While the committee concluded that both of these agreements were improper, this Court cannot overlook the fact that an essential part of each agreement was that counsel for the third defendant would not be made aware of these agreements prior to the rendering of a verdict. This factor alone substantially reduces the recognition which this Court will afford to this ethics opinion when its facts and holding are viewed in the light of the circumstances surrounding the covenant not to execute in the case at bar. The agreement in our case was made known to defense counsel prior to the beginning of the trial.

The City also cites Trampe v. Wisconsin Telephone Co., 214 Wis. 210, 252 N.W. 675 (1934) and Pellett v. Sonotone Corporation, 26 Cal.2d 705, 160 P.2d 783 (1945), as additional authorities to substantiate its position that the covenant agreement in this case was improper. This Court's review of Trampe has disclosed that the agreement therein was a secret one which was not revealed to one of the parties until after completion of the trial. Trampe is also distinguishable from the instant proceeding upon its facts. In the second case cited by the City, a covenant which was kept a secret at the first trial came to light during the second trial and the court held:

"While the trial court did not find, and we cannot hold as a matter of law, that there was any fraud or collusion in this case, such an agreement might lead to a fraud upon the court by concealing the position of a party who is an important witness in the action." Pellett v. Sonotone Corporation, 26 Cal.2d at 713, 160 P.2d at 788.

This Court is not unaware of the difficult considerations which must be resolved by the trial court when it is faced with a covenant not to sue or execute nor do we express our approval of this type of agreement. Notwithstanding the above, we are cognizant of pertinent case law from this jurisdiction which can be used by a trial judge to resolve a dilemma precipitated by such covenants.

The thrust of the City's objection to the covenant in this case is that it allowed a defense to be presented which in fact was no defense at all but rather an attempt to aid the plaintiff in the proof of his case with regard to the City's liability. The substance of the City's argument is that this sort of "collusive action" has the effect of presenting a distorted view of one party's defense to the jury and should not be allowed.

While we recognize some merit in such an argument and do not voice our unqualified approval of the agreement, we are of the opinion that a decision by this Court in favor of the City's contention would be contrary to an applicable precedent. In the case of Damron v. Sledge, 105 Ariz. 151, 460 P.2d 997 (1969), the automobile liability insurers of an automobile owner and driver refused to defend the driver in a personal injury action and the driver subsequently assigned whatever claim he had against the insurance company to the plaintiffs for the company's bad faith in failing to defend. Responding to the insurance company's argument that this type of assignment was collusive and would result in an unjustifiably large verdict for the plaintiff, the Court in Damron stated that:

> "It cannot be held that as a matter of law collusion exists simply because a defendant chooses not to defend when he can escape all liability by such an agreement, and must take large financial risks by defending." 105 Ariz. at 155, 460 P. 2d at 1001.

Though the fact situation in Damron is different from that in the instant case, the legal principle stated therein supports the Fandrey-Bradshaw covenant agreement and the proposition that a defendant may choose to defend in the manner of his choice.

■ Inasmuch as the City's counsel was aware of the subject covenant prior to trial and because the plaintiff could have chosen to execute against only the City even in the absence of a covenant not to execute, it is the holding of this Court that the trial court's rulings with regard to the Fandrey-Bradshaw covenant were correct and are affirmed.

### THE CROSS–APPEAL

■ The plaintiffs directed their cross-appeal to the dismissal of Corena Bradshaw's claim for her damages arising out of the loss of consortium she suffered as a result of her husband's injuries. In support of this cross-appeal, the plaintiffs argue first that the denial of a wife's right to recovery for loss of consortium is at best an anachronistic remnant of her common law inability to sue and recover damages for her own injuries, and second, that such a denial deprives her of equal protection of the laws since the right of a husband to recover for the loss of his wife's consortium is recognized in our State.

Our discussion of these issues must, of course, be predicated upon the case of Jeune v. Del E. Webb Const. Co., 77 Ariz. 226, 269 P.2d 723 (1954), in which a wife whose husband was injured in the course of his employment brought an action against the employer and claimed as her damages the loss of consort, affection, companionship, society, assistance and services. The court referred to these allegations as a novel claim and pointed out that the common law is and always has been that the wife has no such cause of action. It was further noted that the court had no authority to remake the common law and specifically held that:

> "The cause of action for personal injury to the father rests with him for all the resulting damage. It never has been the

law that multiple actions could be brought by each member of the family for a negligent injury sustained by the father." 77 Ariz. at 228, 269 P.2d at 724.

In opposition to the authority cited above, the plaintiffs argue that this is a rapidly disappearing legal concept which has of this date been abandoned by at least twenty-five jurisdictions. While we may be in agreement with this trend as well as the substance of the cross-appellant's arguments, Jeune is the law of this State and:

"Whether prior decisions of the highest court in a state are to be disaffirmed is a question for the court which makes the decisions. Any other rule would lead to chaos in our judicial system." McKay v. Industrial Commission, 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968).

Based upon the foregoing, the rulings of the trial court with regard to the plaintiff's claim for damages because of her loss of consortium are affirmed.

With regard to the appeal from the trial court's judgment upon the questions raised by the appellant, those rulings are similarly

Affirmed.

CASE and DONOFRIO, JJ., concur.