615 P.2d 642

**Harriett Annlee LIVESAY, the surviving spouse of Joseph Otis Livesay, on her own behalf and for and on behalf of Jo Evelyn Livesay, Harry Douglas Livesay and John Otis Livesay, the surviving children of Joseph Otis Livesay, and Anthony D. McCall, a single man, Appellants,**

v.

**STATE of Arizona, Arizona State Highway Department, Appellees.**

No. 14675.

Supreme Court of Arizona,
In Division.

July 11, 1980.

Rehearing Denied Sept. 4, 1980.

Langerman, Begam, Lewis, Leonard & Marks by Noel Fidel and Samuel Langerman, Phoenix, for appellants.

Robert K. Corbin, Atty. Gen. by William R. Jones, Jr., and Edward G. Hochuli, Sp. Asst. Attys. Gen., of Jones, Teilborg, Sanders, Haga & Parks, Phoenix, for appellees.

HAYS, Justice.

Appellants seek review of an adverse jury verdict in their negligence suit against defendant-appellee, the State of Arizona. Taking jurisdiction pursuant to 17A A.R.S. Civil Appellate Procedure Rules, rule 19(e), we affirm.

At 2:00 A.M. on the morning of July 20, 1973, an 18-wheel tractor-trailer, driven by Joseph Otis Livesay, proceeded west on U. S. 60 destined for Phoenix, Arizona. Approximately four miles east of the town of Superior, Route 60 begins a steep downhill grade. The incline continues until at least the Superior exit and is marked by signs warning of the impending hill and advising the use of lower gears in trucks.

Less than one-quarter of a mile east of the Superior boundary, the route-60 motorist must navigate a 1000 foot left-hand turn bordered on the south by rock formations sizable enough to obscure the road west of the curve from view. As the vehicle enters and negotiates the turn, the driver's perspective increases and upon partial completion, s/he is able to observe the entire road. U. S. 60, however, is unlighted, and the nighttime motorist is limited in vision to the scope of his or her headlights.

Several hundred feet west of the 1000-foot curve, U. S. 60 intersects with Arizona State Highway 177, an exit ramp flowing from the main highway to the right. Numerous signs located on the right shoulder of route 60 indicate the existence of the junction to a westbound traveller. Initially, there is a sign demonstrating with arrows that U. S. 60 continues straight while Arizona 177 parts to the right. This placard is visible prior to entering the 1000-foot curve.

Approximately 200 feet further, another arrowed posting indicates that a motorist desiring either Superior or Kearny must turn to the right. Within two to three hundred feet of this information, another sign notes the eastern boundary of Superior, including specifics regarding the town's altitude and date of origin.

As the route 177 ramp exits the major thoroughfare, a standard speed limit sign reduced the permissible rate of travel to 25 m. p. h. This sign is approximately followed by an arrowed sign indicating the location of Highway 177 to the right. The exit ramp then arches sharply to the right. At the beginning of this curve, there is a "Stop Ahead" sign followed at the end of the turn by a stop sign at the intersection of the ramp and route 177.

For reasons not clearly established in the record, upon arrival at the Highway 177 junction, Mr. Livesay left route 60 and proceeded down the exit ramp. Exceeding the 25 m. p. h. speed limit, he continued around the curve, crossed route 177 and came to rest, overturned, against a dwelling located in an adjacent lot. Unfortunately, Mr. Livesay did not survive the accident, and suit for wrongful death was instituted against the State of Arizona by plaintiff-appellant, Harriett Livesay, his spouse, on behalf of herself and the Livesay children. Plaintiff-appellant, Anthony D. McCall, Mr. Livesay's companion driver and the sole passenger of the truck on the tragic evening, survived the accident, however sustained personal injuries and additionally initiated litigation. Both actions were subsequently consolidated for trial. A jury verdict in favor of the state has given rise to the instant appeal.

Appellant initially alleges as error the giving of the following charge to the jury:

The State of Arizona has a duty to design, construct, sign, mark and maintain its roadways in a condition which is reasonably safe for *ordinary* vehicular travel. (Emphasis added.)

It is appellant's contention that use of the term "ordinary" allowed the jury to draw impermissible inferences regarding appellee's duty of care. Based upon this premise, appellant would have us hold that the phrase "ordinary" in the instruction was improper and that a more accurate reflection of the law would have excluded the objectionable language.

Initially, we do not agree that the instruction at bar permitted the erroneous conclusions urged upon us by appellant. The phrase "ordinary vehicular traffic" does not, in our opinion, exclude from its protection the tractor-trailer so common to our nation's roadways.

Of even greater significance, however, the instruction is an accurate statement of the duty imposed upon the state in the maintenance and signing of its roadways.

[T]he State, like a municipal corporation, is not an insurer of the safety of streets and highways under its control, but does have a duty to maintain and repair them in a manner which will keep them reasonably safe for ordinary travel. (Citations omitted). *Arizona State Highway Dept. v. Bechtold*, 105 Ariz. 125, 129, 460 P.2d 179, 183 (1969).

We therefore find no merit in appellant's assertion.

Appellant finally objects to the trial court's refusal to instruct the jury regarding a driver's lessened duty of care under circumstances of "sudden emergency." At trial, appellee alleged contributory negligence and introduced significant evidence of excessive speed in support. Appellant's theory, however, both in the court below and on appeal, is that the evidence entitled the jury to find that Mr. Livesay was lured by misleading signs and road markings into believing that the off-ramp was, in reality, the continuation of Highway 60 and that the driver thereby was confronted with an emergency as he approached the severe right-hand curve.

Although we do not disagree with appellant's statement of the principle, we are not persuaded that the circumstances of the instant litigation support the giving of an instruction on the doctrine. One of the prerequisites, we have said, of a valid "sud-

den emergency," is that the actor must not have been "responsible for the suddenness of the crisis which he faced." (Citations omitted). *Gilbert v. Quinet,* 91 Ariz. 29, 34, 369 P.2d 267, 270 (1962). In addition, we have said that in order to require a requested instruction, the theory must find support in the evidence. *DeElena v. Southern Pacific Co.,* 121 Ariz. 563, 592 P.2d 759 (1979); *Tucson Utility Supplies, Inc. v. Gallagher,* 102 Ariz. 499, 433 P.2d 629 (1967). In the case at bar, we do not agree that the evidence presented at trial supported the conclusion that Mr. Livesay was not responsible for the emergency within the meaning of *Gilbert, supra.* The proof introduced below established clearly that driver Livesay significantly exceeded the 25 m. p. h. permissible speed as he approached the exit ramp curve. Whether he believed he was on the highway or travelling the exit ramp,

Mr. Livesay's failure to adhere to the posted limit was the obvious cause of the crisis. Although there was some testimony that the alignment of the signs could possibly have resulted in confusion, we find this evidence "slight and inconclusive" and thereby insufficient to require the requested instruction. *See Nichols v. Baker,* 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966).

Judgment affirmed.

STRUCKMEYER, C. J., and CAMERON, J., concur.