754 P.2d 761

**Donna M. DUNHAM and Gary L. Dunham, husband and wife, Plaintiffs/Appellants,**

v.

**PIMA COUNTY, a body politic, Defendant/Appellee.**

### No. 2 CA–CV 87–0247.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 25, 1988.

Review Granted June 8, 1988.

Aboud & Aboud, P.C. by Michael J. Aboud, Tucson, for plaintiffs/appellants.

Stephen D. Neely, Pima County Atty. by Thomas E. Dugal, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

We must determine whether Pima County can be held liable for the method in which it provided traffic control at an intersection. Under the circumstances of this case, we conclude that the court was correct in directing a verdict in favor of the county.

This negligence action arose out of a two-vehicle collision that occurred on April 26, 1982, at the intersection of Hughes Access and Valencia Roads in Pima County, south of Tucson. Gilbert Maken, who was familiar with the intersection, was eastbound on Valencia and came to a stop at a stop sign.[1] Unaccountably, because there was no impairment to his vision, he then entered the intersection directly into the path of appellant Donna Dunham, who was traveling north on Hughes Access Road within the posted speed limit and with the right of way. Maken could offer no explanation as to why the accident hap-

---

1. The court was presented with evidence about Maken's actions in connection with the county's summary judgment motion which was denied prior to trial. During trial, counsel for the county scheduled a showing of Maken's videotaped deposition, but the court granted the directed verdict before it was shown, and the jury never saw his testimony.

pened. He testified that he remembered stopping and then waking up in the hospital. Appellant was severely injured. After exhausting her remedies against Maken, she brought this separate action against Pima County for negligence in failing to keep its roads safe for travel.

Traffic at the intersection was controlled by stop signs on Valencia and a beacon light suspended over the intersection which flashed red for traffic on Valencia and yellow for traffic on Hughes Access Road. "Squiggly" white lines led up to painted stop bars on the pavement on both sides of Valencia as it approached the Hughes Access intersection. About a year before the accident occurred, the county had reduced the speed limit for cars on Hughes Access Road from 50 to 45 miles per hour on the approach to the intersection with Valencia. It is undisputed that the traffic control devices conformed to the Manual on Uniform Traffic Control Devices. Pursuant to these traffic control devices, traffic on Valencia was required to stop at the intersection and yield to traffic on Hughes Access Road, the through street. Hughes Access Road was level and straight where appellant was traveling, and there were no obstructions to Maken's view of the traffic. Two witnesses in separate cars stopped on Valencia testified that they saw appellant's vehicle approaching and determined that it was not safe to enter the intersection.

The county's traffic engineer testified that the intersection had experienced an "inordinate number of accidents relative to other intersections" and that it had been on the list of "intersections of concern" since 1977. The majority of the accidents at the intersection were right-angle collisions classified as "failure to yield" accidents. Appellant's expert testified that according to the Manual of Uniform Traffic Control Devices which is published by the U.S. Department of Commerce, if there are more than five accidents per year at an intersection, traffic engineers should be alerted that there is a difficulty in the intersection's operation. He testified that this intersection met that criterion. The court did not permit testimony on the county's future plans for the intersection or on the question of whether the installation of traffic lights or four-way stops would have prevented many of the accidents. The county's engineer admitted on cross-examination that he had testified at his deposition that the intersection was dangerous. Appellant's engineer was not permitted to express his opinion as to the dangerousness of the intersection. He testified, however, that it did not meet acceptable traffic engineering standards.

On appeal, appellant contends that 1) sufficient evidence was presented to require submission of the case to the jury, 2) there was such an appreciable risk of harm to motorists in the intersection that the county should have taken additional reasonable measures and its failure to do so renders it liable for her accident and 3) the court's evidentiary rulings deprived appellant of a fair trial. We find no reversible error.

## DIRECTED VERDICT

"A directed verdict may only be granted where there is no evidence introduced that 'would justify a reasonable person returning a verdict for the opposing party.'" *Rocky Mountain Fire & Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 291, 640 P.2d 851, 853 (1982), quoting *Matson v. Naifeh,* 122 Ariz. 360, 362, 595 P.2d 38, 40 (1979). In making that determination, all evidence must be viewed in the light most favorable to the party opposing the motion. *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976).

Appellant's primary claim against the county was that because the intersection had a high accident-rate history, the county should have improved the safety of the intersection by actions such as signalization or installation of four-way stop signs. She argues that by not taking such action, the county somehow caused the accident. Her secondary claim was that the intersection forced a driver such as Maken not only to judge the distance and speed of approaching cars but also to exercise his judgment about when it was safe to proceed. Since some people see but do not perceive, she contends the county should have protected

him from his negligence. Appellant's last claim, that southbound traffic on Hughes Access Road might have temporarily blocked Maken's vision, is without support in the record.

It is clear that the county's duty is to design, construct, sign, mark and maintain its roads and intersections in a condition which is reasonably safe for ordinary vehicular travel. *Livesay v. State*, 126 Ariz. 345, 615 P.2d 642 (1980); *Arizona State Highway Department v. Bechtold*, 105 Ariz. 125, 460 P.2d 179 (1969). "What is 'reasonably safe' takes into consideration certain minimal expectations that travelers follow the usual rules of the road." *Coburn v. City of Tucson*, 143 Ariz. 50, 54, 691 P.2d 1078, 1082 (1984); see also *Church of Jesus Christ of Latter Day Saints v. Superior Court*, 148 Ariz. 261, 714 P.2d 431 (App.1985). The county is not the insurer of the safety of people who travel on its highways, and it is not required to provide perfect streets or intersections, only those that are reasonably safe for drivers who themselves must exercise reasonable care and follow the rules of the road.

We find the legal principles of *Coburn* to be directly applicable to this case. *Coburn* involved a bicyclist who failed to stop at a stop sign and entered an intersection directly in the path of an oncoming car that had the right of way through the intersection. The plaintiff sued the city, claiming that a bush on city-owned property at the corner of the intersection obstructed the view of travelers who failed to stop at the stop sign. The evidence was that the bicyclist was in the wrong lane and that his view would not have been obstructed had he been in his proper lane. The supreme court, in affirming the granting of summary judgment in favor of the city, stated as follows:

> We hold, as a matter of law, that a municipality is not ordinarily subject to liability for maintaining an intersection where a driver who stops at the stop sign has an unobstructed view of traffic approaching from both directions. The lack of liability may be framed in terms

of duty, *see, e.g., Boyle v. City of Phoenix*, 115 Ariz. 106, 563 P.2d 905 (1977), but we prefer that duty be recognized as a distinct element involving the obligation of the actor to protect the other from harm. Here, there was a duty, but no negligence; therefore, there is no liability.

143 Ariz. at 54, 691 P.2d at 1082.

Applying those principles to this case, we hold that, as a matter of law, the county did not breach its duty of care. In a similar factual setting, a Louisiana court reached the same result. *Vallery v. State Through Department of Transportation & Development*, 480 So.2d 818 (La.App. 1985), writ denied, 481 So.2d 1350 (La. 1986).

### EVIDENTIARY RULINGS

Appellant contends the court erred in two evidentiary rulings. The first was that the court, in a pretrial motion in limine by the county, precluded evidence of improvements that could be made to the intersection; the court, however, specifically permitted introduction of evidence regarding the dangerousness of the intersection at the time of the accident. This ruling prevented the county from showing that, at the time of the accident, plans were being prepared for reconstruction of the intersection. The upshot of this ruling was that appellant would have been able to argue to the jury that the county should have done something to correct the problem and the county would have been precluded from explaining why there was no traffic signal. Appellant did not object to the court's ruling at trial. Under these circumstances, we find no error.

Appellant's other claim is that the court erred in allowing the county to blame the accident on Gilbert Maken. We find no error in this ruling.

Affirmed.

ROLL, J., concurs.

LIVERMORE, Judge, Dissenting.

The majority holds that the county, knowing that an intersection has a large

number of accidents and knowing that available precautionary measures would reduce substantially the number of accidents, has no obligation to utilize those precautionary measures. No jury, it is said, could reasonably find that the failure to correct this dangerous situation violated the county's duty to keep its roads reasonably safe for travel. I believe this holding inconsistent with Arizona case law, *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984); *Bach v. State*, 152 Ariz. 145, 730 P.2d 854 (App.1986), and the weight of authority elsewhere. See Annot., 34 A.L. R.3d 1008 (Supp.1987)..