778 P.2d 1200

**Donna M. DUNHAM and Gary L. Dunham, husband and wife, Plaintiffs/Appellants,**

v.

**PIMA COUNTY, a body politic, Defendant/Appellee.**

**No. CV–88–0121–PR.**

Supreme Court of Arizona, En Banc.

June 22, 1989.

Reconsideration Denied Sept. 19, 1989.

Aboud & Aboud, P.C. by Michael J. Aboud, Tucson, for plaintiffs/appellants.

Stephen D. Neely, Pima County Atty. by Thomas E. Dugal, Asst. Pima County Atty., Tucson, for defendant/appellee.

## OPINION

B. MICHAEL DANN, Superior Court Judge.

Donna Dunham suffered serious physical injuries when another motorist failed to yield at a stop sign and a flashing red light. The Dunhams brought suit against Pima County alleging negligence in failing to provide traffic warnings and other controls at the intersection near Tucson. The trial court directed a verdict against the plaintiffs and in favor of the county. Following affirmance by a divided court of appeals, Division Two in *Dunham v. Pima County*, 157 Ariz. 27, 754 P.2d 761 (App.1988), we granted review. We reverse.

### THE INTERSECTION AND THE ACCIDENT

In summary, the evidence showed that vehicles traversing the intersection in question—where Hughes Access and Valencia Roads (south of Tucson) cross at a right angle—were controlled by stop signs on Valencia and a traffic light suspended over the intersection which flashed red for traffic on Valencia and yellow for traffic on Hughes Access Road. White lines led up to painted stop bars on the pavement on both sides of Valencia leading up to the Hughes Access intersection. Traffic on Valencia was required to stop at the intersection and yield to traffic on Hughes Access Road, the through street. Hughes Access Road was level and straight approaching the intersection, and there were no visual obstructions for drivers crossing or entering Hughes from Valencia.

On April 26, 1982, Gilbert Mekan was eastbound on Valencia and came to a stop at the stop sign. Inexplicably, and without yielding, he entered the intersection directly into the path of plaintiff Donna Dunham, who was traveling north on Hughes Access Road within the posted speed limit and with the right of way. A collision followed. Mekan could offer no explanation as to why the accident happened. He testified that he remembered stopping and then waking up in the hospital.

The county's traffic engineer testified that the intersection had experienced an "inordinate number of accidents relative to other intersections," and that it had been on the list of "intersections of concern" since 1977. The majority of the accidents at the intersection were, like this one, right-angle collisions classified as "failure to yield" accidents. He also admitted on cross-examination that he had testified at his deposition that the intersection was dangerous. Dunhams' expert testified that the intersection did not meet acceptable traffic engineering standards. According to the Manual of Uniform Traffic Control Devices, published by the United States Department of Commerce, if there are more than five accidents per year at an intersection, traffic engineers should be alerted that there is a difficulty in the intersection's operation. The Dunhams' expert testified that this intersection met that criterion.

### THE DIRECTED VERDICT

On this evidence, the trial court directed a verdict in favor of the county, concluding

that the county could not have been negligent as it was entitled to presume that Mekan would have stopped and waited until traffic had cleared. Since a jury question was presented concerning the county's negligence, we reverse and remand for a new trial.

■ The county owes a duty to those using its roads to keep them reasonably safe for travel. *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984); *Bach v. State,* 152 Ariz. 145, 730 P.2d 854 (App. 1986). That a motorist (either a party or non-party, like Mekan) might be negligent in using a road, and thereby contribute to the accident, does not necessarily absolve the county from its negligence, if any; rather, the two inquiries are separate. *Bach,* 152 Ariz. at 149, 730 P.2d at 858. Where, as here, evidence is offered from which the fact-finder could reasonably conclude that the public agency or jurisdiction should have foreseen a danger to plaintiff from the negligent or inattentive conduct of plaintiff or of another, then the question of the county's negligence is one for the jury. *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 706 P.2d 364 (1985).

Nevertheless, the county argues that this court's decision in *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984), clearly exonerates it. This attempt to read *Coburn* so broadly cannot succeed. In *Coburn* this court upheld the trial court's ruling that, as a matter of law, the City of Tucson could not have foreseen that a bicyclist would approach and enter an intersection both in the wrong lane and headed in the wrong direction, resulting in an obscuring of his view, in the absence of any evidence that those unusual circumstances had occurred before. We observed that "[w]hat is 'reasonably safe' takes into consideration certain *minimal expectations* that travelers follow the usual rules of the road." *Id.* at 54, 691 P.2d at 1082 (emphasis added). We affirmed the summary judgment because no fact issue existed on the question of whether the City of Tucson

ought to have foreseen the kind of conduct that led to the intersectional collision. Thus, like any decision concerned with the absence, presence, or weighing of evidence of foreseeability of harm, *Coburn* turns on its unique facts.[1]

■ In this case, however, and as summarized above, there was sufficient evidence to get to the jury on the question whether the county foresaw or should have foreseen the danger to motorists like Dunham arising out of conduct like Mekan's, given the kind and amount of traffic signals present. Prior decisions of this and other courts have upheld a defendant's liability where the conduct of another which contributed to the injury was admittedly inattentive, or worse, and where the evidence supported a finding that the subpar behavior should have been anticipated. *See, e.g., Markowitz; Bach; State v. Watson,* 7 Ariz.App. 81, 436 P.2d 175 (1967); *McKenna v. Volkswagenwerk Aktiengesellschaft,* 57 Haw. 460, 558 P.2d 1018 (1977). In the few years prior to the accident in question, there had been sixty-five accidents at the intersection, fifty-two of which had been similar to the case before us. Certainly, a jury could hold a defendant liable for failing to foresee that which had happened on fifty-two prior occasions.

Given the evidence produced at trial, the foreseeability of harm arising from the county's conduct and its negligence were jury questions and should not have been decided as matters of law.

## EVIDENTIARY RULINGS

Since this proceeding is being remanded for a new trial, two evidentiary rulings by the trial court will be addressed for guidance in the event of a retrial. *See State v. Vincent,* 159 Ariz. 418, 429, 768 P.2d 150, 161 (1989) (addressing statutory construction to guide trial court upon remand). Both rulings prevented appellants' expert witness in traffic and highway safety, Har-

---

1. So does *Vallery v. State,* 480 So.2d 818 (La. App.1985), another case upon which the county heavily relies. There, unlike here, a brand new intersection was involved; thus, there was no history of similar accidents.

ry Krueper, from testifying to certain relevant matters before the jury.

### 1. *Opinion regarding dangerousness of intersection:*

 Krueper clearly is qualified as an expert in matters of traffic and highway safety engineering. Indeed, he was allowed to give his expert opinions on a number of issues in the case, including: intersection design and signalization consideration; the significance of the accident history at this particular intersection; and the human factors thought to affect a driver's actions upon approaching and entering street crossings in general and this intersection in particular. However, when appellants attempted to elicit the expert's opinion regarding the dangerousness of the intersection, given all that he had seen, read, and heard, the trial judge blocked the testimony on the ground that the question was one for the jury.

This ruling was an abuse of discretion at least for the reason given. It is too late in the day to keep from the jury otherwise helpful opinion testimony from a qualified expert simply because the opinion embraces issues the jury will be asked to decide. *See* Ariz.R.Evid. 704; *Bliss v. Treece*, 134 Ariz. 516, 518, 658 P.2d 169, 171 (1983); M. Udall & J. Livermore, *Law of Evidence* § 26 (2d. ed. 1982); *McCormick on Evidence* § 12 (3d ed. 1984). Since the promulgation of Rule 704, which was intended to reduce, if not eliminate, this basis for objection, this and other courts have upheld trial court rulings allowing expert opinions in analogous contexts. *See, e.g., State v. Williams*, 132 Ariz. 153, 160, 644 P.2d 889, 896 (1982) (expert opinion that stick used in an assault was of a "dangerous nature"); *Karns v. Emerson Electric Co.*, 817 F.2d 1452, 1459 (10th Cir.1987) (testimony concerning the "unreasonably dangerous" nature of an implement in a products liability action).

### 2. *Testimony concerning requirements of the Manual on Uniform Traffic Control Devices:*

 Krueper was also precluded from testifying that the Manual on Uniform Traffic Control Devices, mandated by statute, A.R.S. § 28–641, called for different and additional signalization at the intersection. Excluding this evidence was also error. This evidentiary ruling may have been prompted by the lower court's erroneous view of the test of the county's negligence, i.e., that Mekan's negligence meant that the county could not have been liable as a matter of law for what it had done or failed to do at the intersection. Moreover, on purely relevance grounds, testimony from a qualified expert that the street design or warnings in question failed to adhere to the manual's requirements is admissible to prove negligence. *State v. Watson*, 7 Ariz.App. at 87, 436 P.2d at 181. On the present record, the expert's testimony about the manual's minimum standards for the intersection should have been allowed.

### DISPOSITION

We reverse the trial court's ruling and vacate the court of appeals' opinion. This matter is remanded for proceedings consistent with the above opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., (Retired) did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, Judge B. MICHAEL DANN, Chief Presiding Judge, Maricopa County Superior Court, was designated to sit in his stead.