714 P.2d 431

The CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, and the City of Tucson, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the County of Pima and Honorable Robert Buchanan, a judge thereof, Respondents,

and

Susan CONNELLY, Real Party in Interest.

Nos. 2 CA–SA 0261, 2 CA–SA 0262.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 29, 1985.

Rehearing Denied Oct. 16, 1985.

Review Denied Feb. 12, 1986.

Bury, Moeller & Humphrey by Marshall Humphrey, III, Tucson, for petitioner Church of Jesus Christ of Latter Day Saints.

Kimble, Gothreau, Nelson & Cannon, P.C. by Daryl A. Audilett, Tucson, for petitioner City of Tucson.

Haralson, Kinerk & Morey, P.C. by Michael E. Larkin and Denneen L. Peterson, Tucson, for real party in interest.

HATHAWAY, Presiding Judge.

These special actions have been taken from the trial court's denial of motions for summary judgment filed by the two petitioners. Since the trial court's denials of the petitioners' motions were interlocutory, non-appealable orders, see A.R.S. § 12–2101, and since these cases present no disputed issues of material fact which necessitate presention to a trier of fact, special action jurisdiction is appropriate and we grant relief.

The facts show that on July 27, 1983, Chris Stewart, an eleven-year-old boy, was struck by an automobile while riding his bicycle on Chapel Avenue in Tucson. The boy subsequently died of injuries sustained in the accident. Prior to the accident, Chris

and his brother Matthew had been riding their bicycles several times down a sloped, paved driveway leading from the private parking lot situated behind the Church of Jesus Christ of Latter Day Saints (Mormon Church) directly onto Chapel Avenue without stopping. In January 1984 the boy's surviving mother, Susan Connelly, the real party in interest in both special actions, filed suit for wrongful death against the City of Tucson, the Mormon Church, and the driver of the vehicle which struck the boy. The driver is no longer a party to the action. Both the City and the Mormon Church filed motions for summary judgment, the denials of which are the basis of these special actions.

Generally, summary judgment is not appropriate in negligence cases. *Barnhizer v. Paradise Valley Unified School District,* 123 Ariz. 253, 599 P.2d 209 (1979); *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967). However, it is proper when a record demonstrates no material issues of fact and that the moving party is entitled to judgment as a matter of law. *Jabczenski v. Southern Pacific Memorial Hospitals,* 119 Ariz. 15, 579 P.2d 53 (App.1978).

We first address the duty owed by the Mormon Church to the decedent. Ordinarily, a landowner's duty to a trespasser (there is no dispute that the decedent was trespassing on church property at the time just prior to the accident) is not to willfully or wantonly injure him. *Barnhizer,* supra; *Buckeye Irrigation Company v. Askren* 45 Ariz. 566, 46 P.2d 1068 (1935). As stated in the Restatement of Torts (Second) § 333 (1965), a possessor of land is not liable to trespassers for physical harm caused by failure to exercise reasonable care to put land in a condition reasonably safe for their reception. To overcome this hurdle, the real party in interest relied on an exception to the rule commonly known as the doctrine of attractive nuisance. *Spur Feeding Company v. Fernandez,* 106 Ariz. 143, 472 P.2d 12 (1970); W. Prosser Law of Torts at 364 (4th Ed.1971). Section 339 of the Restatement provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

\*　　\*　　\*　　\*　　\*　　\*

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling within or in coming within the area made dangerous by it ..."

As the court stated in *McHugh v. Reading Company,* 346 Pa. 266, 30 A.2d 122 (1943):

"The purpose of the *duty* [of the landowner to trespassing children] is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger." 346 Pa. at 269, 30 A.2d at 123. (Emphasis in original)

In *Barnhizer,* supra, the thirteen-year-old decedent trespassed on school property, climbing to the roof of a school building, falling, and eventually dying. The court found as a matter of law that a condition which must exist before a duty arose to protect the decedent against his own folly was that the decedent be unable to appreciate the harm which might result from his own immature recklessness in the case of unknown danger. In *Barnhizer,* the court found that the decedent, just shy of his fourteenth birthday, and of the age and intelligence to appreciate the clear danger of falling, made the attractive nuisance doctrine inapplicable. Similarly, in *Carlson v. Tucson Racquet and Swim Club,* 127 Ariz. 247, 619 P.2d 756 (App.1980), the sixteen-year-old plaintiff trespassed on the grounds of a swim club, dove into the pool and sustained a paralyzing spinal cord injury. We cited *Barnhizer,* supra, finding that the attractive nuisance doctrine was limited to dangerous conditions which could not be understood or appreciated by a youthful plaintiff. We stated, "Where the plaintiff is of the age and experience to appreciate the danger that produces his injury the doctrine does not apply." 127 Ariz. at 249, 619 P.2d at 758.

The evidence was that the decedent's death was caused by his desire to drive his bicycle fast down the sloped driveway out onto Chapel Avenue. The evidence before the trial court reflected that the decedent had ridden his bike since the age of five and had participated in a school guard crossing program in which he apparently had led other students across intersections on their way to school. There is nothing in the record to show that the decedent, because of age and/or intelligence, was unable to appreciate the clear danger of riding his bicycle out into a city street without yielding to oncoming traffic. Under comment *m* to § 339 of the Restatement at 204, "the possessor [of land] is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado." The facts of this case fit squarely within the comment to the Restatement and the above-cited cases, and we find that the attractive nuisance doctrine is inapplicable. Accordingly, the Mormon Church had no duty to the decedent-trespasser other than to not willfully or wantonly injure him. The church's motion for summary judgment should therefore have been granted.

As to the case against the City of Tucson, the real party in interest's claim of liability was predicated on the city's having repaved Chapel Avenue, dropping its grade three feet and thereby increasing the angle of the slope of the church's driveway. Additionally, it was alleged that the city's easement extended halfway up the paved driveway and that the city itself had paved the bottom half of the driveway at one time. The case is similar to the facts presented in our case of *Coburn v. City of Tucson*, 143 Ariz. 76, 691 P.2d 1104 (App. 1984), approved as modified in *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984). The city has a duty to keep its streets reasonably safe for travel. *Lowman v. City of Mesa*, 125 Ariz. 590, 611 P.2d 943, (App.1980). The duty extends to removing obstructions and hazards, *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983), and the city must warn of known dangerous conditions on the streets. *Ofstedahl v. City of Phoenix*, 129 Ariz. 85, 628 P.2d 968 (App.1981). As the Supreme Court pointed out in its *Coburn* decision, the city's duty is to conform to the recognized standard of conduct, which is to keep its streets reasonably safe for travel, citing *City of Phoenix v. Weedon*, 71 Ariz. 259, 226 P.2d 157, (1950) and *City of Phoenix v. Clem*, 28 Ariz. 315, 237 P. 168 (1925). However, the Supreme Court pointed out that motorists (and the extension to bicyclists in this case is appropriate) have a concommitant duty to drive with reasonable care. Liability does not attach unless there is also a duty.

As in *Coburn*, here the issue is not whether the city had a duty toward the decedent, since it did have the duty to keep the streets reasonably safe for travel by the decedent and other people. Rather, the issue is whether there is "evidence sufficient to create a question of fact on the issue of whether the city's [action in lowering the grade of Chapel Avenue and failing to warn of a possibly dangerous condition] was conduct which fell below the standard of care and thus breached the duty." 143 Ariz. at 53, 691 P.2d at 1081. Since we can answer that question in the negative, the trial court erred in failing to grant summary judgment. The reason it can be answered in the negative is because the city is not bound to provide perfect streets for travel, "but only those which are 'reasonably safe.' What is 'reasonably safe' takes into consideration certain minimal expectations that travelers follow the usual rules of the road." 143 Ariz. at 54, 691 P.2d at 1082. Cf. *Beach v. City of Phoenix*, supra; *Rodgers v. Ray*, 10 Ariz.App. 119, 457 P.2d 281 (1969). In this case, it is undisputed that the decedent broke the "usual rules of the road" by failing to yield the right-of-way to an oncoming vehicle. Accordingly, as in *Coburn*, while the city had a duty to keep the streets reasonably safe, there was no breach of that duty and therefore no liability. Therefore, the motion for summary judgment of the City of Tucson should have been granted as well. The orders of

the trial court denying the petitioners' motions for summary judgment are vacated and it is ordered that the motions be granted.

LIVERMORE and LACAGNINA, JJ., concur.