OPINION
 

 THOMPSON, Presiding Judge.
 

 Plaintiffs, Antone and Judy Tobel,
 
 [1]
 
 appeal the grant of summary judgment in favor of defendants, City of Tempe (City), State of Arizona (State), and Arizona Department of Public Safety (DPS) (collectively defendants). We conclude that questions of fact exist as to whether defendants breached the duty of
 
 *170
 
 care and as to whether Tobel acted with due regard for his own safety. Accordingly, we hold that summary judgment was improperly granted.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On the night before the accident in question, DPS responded to an automobile accident on the westbound U.S. 60 freeway, near Mill Avenue. DPS requested that the Tempe Police Department assist in preventing traffic from entering the freeway from the westbound Mill Avenue on-ramp. Tempe Police Officers White and Holdinsky closed the westbound U.S. 60 Mill Avenue on-ramp and the left-turn lane of northbound Mill Avenue using barricades that were being stored on the east sidewalk of Mill Avenue for use during a construction project.
 

 At the end of their shift, Officers White and Holdinsky spoke with a DPS officer who had arrived to assume traffic control duties on Mill Avenue. The DPS officer asked the Tempe officers to leave the barricades in place and assured them that DPS would remove the barricades once the accident investigation was complete.
 

 At about 7:00 the next morning, Tobel’s employer, Barricade & Light, Inc., dispatched him to respond to an emergency condition on Mill Avenue. Tobel arrived to remove the barricades and parked his flatbed truck in the closed left-turn lane, with its flashing lights operating. Tobel attempted to lay the barricades on the center median, but it was not wide enough, so he decided to carry the barricades to the east sidewalk of Mill Avenue. Tobel walked between two cars stopped in the northbound high-speed lane. He stopped at the striped line and looked before stepping into the curb lane. As he stepped into the curb lane, Tobel was hit by a truck driven by Tina Rutledge.
 

 Plaintiffs filed this action against defendants for their alleged negligence in establishing an improper lane closure and abandoning that lane closure after the traffic accident investigation was complete. Defendants filed separate motions for summary judgment. City argued that its officers acted reasonably and, therefore, did not breach any duty. Defendants argued that Tobel acted unreasonably in stepping out into traffic and therefore his injuries were unforeseeable and they are not liable for such unforeseen risks. Defendants also argued that Tobel proximately caused his own injuries.
 

 Plaintiffs offered affidavits from a law enforcement expert, Robert Feliciano, and a traffic engineering expert, Harry Krueper, who stated that defendants created a dangerous condition by abandoning the barricades and should have removed the barricades immediately after the accident investigation was complete. Plaintiffs’ experts also stated that the lane closure did not comply with the applicable standards because it was improperly tapered and failed to provide advance warnings of the unexpected closure. Plaintiffs argued that these experts’ opinions presented a question of fact as to whether defendants breached their duty of care. Plaintiffs also claimed that
 
 Coburn v. City of Tucson,
 
 143 Ariz. 50, 691 P.2d 1078 (1984), and
 
 Church of Jesus Christ of Latter Day Saints v. Superior Court,
 
 148 Ariz. 261, 714 P.2d 431 (App.1985) (hereinafter
 
 Church),
 
 were not dispositive because the parties disputed whether Tobel followed the rules of the road. Tobel testified that he looked before stepping into the curb lane, and claimed that even if he did not look, he would have been exempt from the usual rules as a highway worker pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 28-623(B).
 

 The trial court found that Tobel did not look before he stepped into the curb lane and, consequently, that he failed to obey the rules of the road. The trial court concluded that it was bound by
 
 Coburn
 
 and
 
 Church,
 
 which held that although there is a duty to keep the streets reasonably safe for travel, there is no breach of that duty as to travelers who do not follow the usual rules of the road. The court also rejected Tobel’s claim that A.R.S. § 28-623(B) exempted him from the traffic statutes. The court found defendants did not breach any duty and entered summary judgment.
 

 Plaintiffs timely filed a notice of appeal from the final judgment in favor of defen
 
 *171
 
 dants. We have jurisdiction pursuant to A.R.S. § 12-210(B).
 

 DISCUSSION
 

 A trial court may enter summary judgment when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.
 
 Do v. Farmers Ins. Co. of Arizona,
 
 171 Ariz. 113, 115, 828 P.2d 1254, 1256 (App.1991). Summary judgment is appropriate where “the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.”
 
 Orme School v. Reeves,
 
 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In reviewing a grant of summary judgment, we view the evidence in the light most favorable to the party opposing the motion, and give all favorable inferences fairly arising from the evidence to that party.
 
 Do,
 
 171 Ariz. at 115, 828 P.2d at 1256.
 

 Defendants argue that plaintiffs failed to submit a statement specifying which of defendants’ facts were disputed as required by Uniform Rules of Practice of the Superior Court (Unif. R.P.) IV(f). Plaintiffs’ statements of fact in response to both defendants’ motions “denied” certain paragraphs. We find this sufficiently specifies which facts plaintiffs “dispute” under Rule IV(f), Unif. R. P.
 

 I. Defendants’ Duty of Care and Breach
 

 Defendants have a duty to keep the streets reasonably safe for travel.
 
 Coburn,
 
 143 Ariz. at 52, 691 P.2d at 1080. “What is ‘reasonably safe’ takes into consideration certain minimal expectations that travelers follow the usual rules of the road.”
 
 Id.
 
 at 54, 691 P.2d at 1082.
 

 Plaintiffs presented evidence that the lane closure fell below the applicable standard of care and caused a dangerous condition to exist. Harry Krueper, plaintiffs’ traffic engineering expert, opined that the lane closure failed to provide motorists adequate warning of the unexpected lane closure, failed to provide adequate tapering, and did not comply with the
 
 City of Phoenix Traffic Barricade Manual
 
 and the
 
 Manual on Uniform Traffic Control Devices,
 
 which set forth the applicable standards. Krueper’s affidavit stated that because of the lack of advance warnings motorists were unable to adequately perceive, react, and respond to the unexpected lane closure and that this problem was compounded by the morning rush hour traffic. Krueper also stated that the lane closure created unexpected and sudden stalled traffic on Mill Avenue, around which motorists would attempt to maneuver or avoid. The closure caused a dangerous road condition to exist, which distracted the attention of motorists, including Rutledge, the driver of the truck that hit Tobel, and made her “unable to perceive, respond and react effectively to [Tobel].”
 

 Plaintiffs’ law enforcement expert, Robert Feliciano, agreed that the lane closure failed to provide adequate warning and created a dangerous condition which caused Rutledge to be unable to perceive and react to Tobel’s presence. Both of these opinions were un-controverted.
 

 Plaintiffs also established through their experts’ affidavits that defendants improperly abandoned the barricades after the accident investigation was complete. Tempe police officers are responsible for traffic accident scene management, which includes clearing the scene before the investigating officer leaves, or if it is impossible to clear the scene, “officers will take all necessary precautions to safeguard the public.” Tempe Police Officer Holdinsky testified at his deposition that unattended lane closures cause congestion, which can create traffic hazards. Officer White stated that Tempe Police procedures require the removal of lane closures immediately after an accident investigation is completed. This evidence was also uncontro-verted.
 

 “Where ... evidence is offered from which the fact-finder could reasonably conclude that the public agency or jurisdiction should have foreseen a danger to plaintiff from the negligent or inattentive conduct of plaintiff or of another, then the question of the county’s negligence is one for the jury.”
 
 *172
 

 Dunham v. Pima County,
 
 161 Ariz. 304, 306, 778 P.2d 1200, 1202 (1989) (citation omitted);
 
 see also Beach v. City of Phoenix,
 
 136 Ariz. 601, 604, 667 P.2d 1316,1319 (1983) (where it appears from the evidence that reasonable people could differ as to whether injury is foreseeable, the question of negligence is one of fact for a jury). The uncontroverted affidavits of plaintiffs’ experts establish that the lane closure was improper and created a dangerous condition. The evidence also established that the abandonment of the lane closure was against Tempe Police policy and also fell below the standard of care.
 

 Keeping in mind that plaintiffs are entitled to all favorable inferences fairly arising from the evidence,
 
 Do,
 
 171 Ariz. at 115, 828 P.2d at 1256, we find that reasonable people could conclude that Tobel’s injuries were a result of the dangerous condition created by the improper lane closure. A reasonable juror could decide that it was an appreciable risk of the improper lane closure that such harms as befell Tobel would occur. It could also be deemed reasonably foreseeable that the abandonment of the lane closure would cause Tobel to be in the midst of rush hour traffic and injured by a passing motorist. Further, it must be determined whether the risk created by defendants’ conduct was unreasonable.
 
 See Rogers v. Retrum,
 
 170 Ariz. 399, 402-04, 825 P.2d 20, 23-25 (App.1991).
 

 Defendants contend that the requirement that lane closures be removed as soon as possible was not intended to protect “traffic specialists,” such as Tobel, but motorists and pedestrians. By abandoning the lane closure and leaving barricades in place, defendants made it necessary for Tobel to place himself in the midst of morning rush hour traffic to remove the barricades. Such a result is reasonably foreseeable. Therefore, we think reasonable minds could differ as to whether Tobel was one of a class of persons intended to be protected by the policy that requires immediate removal of barricades.
 

 Similarly, defendants attack plaintiffs’ experts’ opinions that the lane closure was de-fieient for failing to provide adequate warning and tapering. Defendants claim these requirements are to protect motorists, not workers removing barricades. However, plaintiffs’ experts established that the improper lane closure created a distraction and traffic congestion. The officers also testified that lane closures create hazardous road conditions. It is a foreseeable risk of such dangerous conditions that workers in the roadway might be injured by a motorist distracted by the dangerous condition or traffic congestion. Thus, the unexpected lane closure and dangerous conditions may have distracted Rutledge and prevented her from noticing Tobel.
 

 II. Tobel’s Conduct
 

 Defendants argue that it was not the lane closure and abandonment of it that caused Tobel’s injuries, but the manner in which Tobel removed the barricades the next morning. Defendants contend that Tobel’s manner of removal was unreasonable and violative of the rules of the road and, therefore, not a risk against which defendants were required to protect. Defendants argue, and the trial court agreed, that
 
 Coburn,
 
 143 Ariz. 50, 691 P.2d 1078, and
 
 Church,
 
 148 Ariz. 261, 714 P.2d 431, mandate judgment in their favor.
 

 Coburn
 
 and
 
 Church
 
 hold that in deciding whether a road is “reasonably safe,” courts should “[take] into consideration certain minimal expectations that travelers follow the usual rules of the road.”
 
 Coburn,
 
 143 Ariz. at 54, 691 P.2d at 1082;
 
 Church,
 
 148 Ariz. at 263, 714 P.2d at 433. Each case concludes that evidence that harm befell persons who did not follow the rules of the road in their use of city streets does not establish that the city breached its duty to provide reasonably safe streets. In
 
 Cobum
 
 and
 
 Church
 
 it was
 
 undisputed
 
 that the plaintiffs failed to follow the rules of the road. Here, however, there is evidence that Tobel looked before he stepped into the curb lane of traffic.
 
 [2]
 
 An
 
 *173
 
 eyewitness in a car in the high-speed lane also said that Tobel stopped prior to entering the curb lane. There clearly was some evidence that Tobel obeyed the rules of the road and acted with due regard for his own safety.
 

 Thus, unlike
 
 Coburn
 
 and
 
 Church,
 
 the trial court here could not conclude as a matter of law that Tobel’s conduct was unreasonable and that, therefore, defendants did not breach their duty. The trial court’s conclusion that Tobel did not follow the usual rules of the road because he stepped into the curb lane without looking for traffic ignores the evidence that Tobel did look. This evidence creates a question of material fact that must be decided by the jury.
 

 The claim that Tobel failed to look raises the defense of contributory negligence, which is always a question for the jury. Ariz. Const, art. 18, § 5. “A contributory negligence issue cannot be taken from the jury by the simple expedient of calling it an issue of causation.”
 
 Markowitz v. Arizona Parks Bd.,
 
 146 Ariz. 352, 359, 706 P.2d 364, 371 (1985).
 

 Similarly, in
 
 Beach,
 
 the court held that although an obvious obstruction in the roadway might lead reasonable persons to find that the pedestrian was at fault for failing to exercise reasonable care to avoid it, it did “not relieve the City of its duty to pedestrians, but only raise[d] the possible defense of contributory negligence. This defense, however, is always a question for the jury in Arizona and cannot be established by the court.”
 
 Beach,
 
 136 Ariz. at 604, 667 P.2d at 1319. Any failure to exercise reasonable care by Tobel goes to the issue of contributory negligence and cannot be decided on summary judgment, particularly where his alleged negligence is disputed.
 

 III. A.R.S. § 28-623(B)
 

 Because we conclude that a question of fact existed as to whether Tobel failed to yield the right-of-way, and as to whether he exercised reasonable care for his own safety, we need not decide whether Tobel was exempted from the rules of the road pursuant to A.R.S. § 28-623(B). However, because this issue may arise again on remand, in the interests of judicial economy, we will address it here.
 

 A.R.S. § 28-623(B) (1989) provides:
 

 Unless specifically made applicable, the provisions of this chapter shall not apply to persons, teams, motor vehicles and other equipment while 'actually engaged in work upon the surface of a highway ... but shall apply to such persons and vehicles when traveling to or from such work.
 

 Defendants contend that to exempt Tobel from the rules of the road pursuant to A.R.S. § 28-623(B) requires a “strained interpretation” of the statute.
 

 In deciding this issue of statutory interpretation, we are not bound by the trial
 
 *174
 
 court’s conclusion.
 
 Chaparral Dev. v. RMED Int’l, Inc.,
 
 170 Ariz. 309, 311, 823 P.2d 1317,1319 (App.1991).
 

 Our first duty in interpreting a statute is to determine and give effect to the legislature’s intent, and the first place to look is the wording of the statute. If the language is plain and unambiguous, then no construction is necessary and our duty is simply to apply that plain and unambiguous language.
 

 Id.
 
 (citations omitted). We give effect to the statutory language in accordance with its commonly accepted meaning unless the statute provides a definition or “ ‘it appears from the context that a special meaning was intended.’ ”
 
 State v. Reynolds,
 
 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992) (quoting
 
 Mid Kansas Fed. Sav. & Loan Ass’n of Wichita v. Dynamic Dev. Corp.,
 
 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991)). If an ambiguity exists, “the court may examine a variety of factors including the language used, the context, the subject matter, the effects and consequences, and the spirit and purpose of the law.”
 
 Id.
 
 We find that as applied to the facts of this case, the statute is ambiguous.
 

 Defendants argue that Tobel was not performing actual work “upon” the surface of the road because he was “travelling away from the location of the barriers, and attempting to store the barriers at another location.” However, when he was hit, Tobel was performing work, i.e, removing barricades used for a police lane closure. Tobel was also “upon” the surface of the highway, i.e, in the curb lane. The definitional statute, A.R.S. § 28-101(65), defines “highway” as “the entire width between the boundary lines of every way when any part thereof is open to the use of the public for purposes of vehicular travel.” Tobel was still within the boundary lines of Mill Avenue when he was hit. Thus, the work Tobel was engaged in was in fact “upon” the surface of the highway.
 

 The only limitation in the statute is that it shall not apply to such persons “when traveling to or from such work.” A.R.S. § 28-623(B). This restriction does not apply here where Tobel was in the midst of removing barricades from the roadway when he was injured. Rather, we read this limitation as a statement of the “going and coming” rale, which provides that for purposes of the doctrine of
 
 respondeat superior,
 
 an employee is not within the course and scope of his employment when he is engaged in travel necessarily incurred in coming to or going from work.
 
 See Bishop v. State Dep’t of Corrections,
 
 172 Ariz. 472, 475, 837 P.2d 1207, 1210 (App.1992). Tobel was not “traveling to or from” the work he was performing; he was actually engaged in such work at the time he was injured. Thus, A.R.S. § 28-623(B) applies here.
 

 CONCLUSION
 

 Plaintiffs provided sufficient evidence to raise a triable issue regarding whether defendants breached their duty to provide reasonably safe roads by creating an improper lane closure and thereafter abandoning it. Whether defendants’ conduct was a legal cause of plaintiffs’ injuries presents a triable issue. There is a disputed question of fact as to whether Tobel conducted himself with due regard for his own safety, which precludes entry of summary judgment in favor of defendants as a matter of law pursuant to
 
 Coburn,
 
 143 Ariz. 50, 691 P.2d 1078, and
 
 Church,
 
 148 Ariz. 261, 714 P.2d 431. Any question of Tobel’s alleged contributory negligence is a question for the jury.
 
 See
 
 Ariz. Const, art. 18, § 5. Accordingly, we hold that the trial court erred in concluding that defendants were entitled to judgment as a matter of law. We reverse and remand to the trial court for further proceedings consistent with this decision.
 

 GRANT and GERBER, JJ., concur.
 

 [1]
 

 . We refer to both plaintiffs as "plaintiffs” and Antone Tobel as “Tobel."
 

 [2]
 

 . In Tempe City Court proceedings, Tobel testified as follows:
 

 Q. And then as you moved further did you stop before you entered what I call the curb lane?
 

 
 *173
 
 A. Yes, I stepped just past the front end of her car, stopped and looked to my right to see if there was any traffic. And after I seen [sic] that it was clear, I proceeded to head across the road.
 

 Q. And then what happened?
 

 A. And next thing, I got hit by a car.
 

 Q. Did you see any vehicles at all as you looked south — was that southbound that you looked?
 

 A. Yes, it was.
 

 Q. Did you see any vehicles at all?
 

 A. I didn't see any vehicles. That's the only reason I stepped out.
 

 At his deposition, Tobel testified consistently:
 

 Q. So, you looked in what direction first before you go into the number one lane? Do you look north or do you look south?
 

 A. I look south first.
 

 Q. You look south first and you don’t see any cars coming?
 

 A. No.
 

 
 *163
 
 Although the applicant’s written records were not a model of clarity, the answers alerted the employer to the existence of the mental impairment. In spite of the impairment, the employer hired and retained the applicant and accommodated the post traumatic stress disorder.
 
 *173
 
 Q. And then you turn your head and you look north?
 

 A. And I look north.
 

 Q. And how long did you look north?
 

 A. Approximately two to three seconds.
 

 Q. And then you step out into the one lane? A. Then I looked south again. I looked south, I look north, I look south. Looked over at the sidewalk, took two steps and got hit.
 

 Q. When you stepped between the two cars in lane number two, it’s my understanding from what you said earlier that you stepped past the car to your right and then stopped at about the lane marker: is that correct?
 

 A. I stopped right behind my truck and looked at the lady in this car so that she would acknowledge that I was there. When we acknowledged that we seen each other, then I proceeded across to the white-striped line where I stopped again to checkout [sic] traffic.